(68 App. Div. 287.)
                        FRANCIS v. CAMPBELL.

(Supreme Court, Appellate Division, Second Department.   January 24, 1902.)

1. EVIDENCE—CONVERSATIONS WITH DECEASED PERSON.
    In an action for the consideration of a contract to disclose a secret
    formula, communicated to plaintiff by a deceased employer, evidence by a
    third party as to conversations with such employer, in which plaintiff
    was not concerned, and at which he was not present, was incompetent.

2. SAME—TESTIMONY ELICITED BY ADVERSE PARTY.
    Plaintiff's evidence that his late employer, on divulging the formula
    to him, had told him that he might use it for his own purposes, was
    competent, when elicited by defendant, though plaintiff might have been
    incompetent to so testify in his own behalf.

3. SECRET FORMULA—DISCLOSURE—BREACH OF TRUST.
    Plaintiff having testified "that his employer told him that he might
    use the formula for his own purposes, and there being no evidence that
    plaintiff's right to disclose the formula was at all restricted when it was
    divulged to him, his sale and communication thereof was not, as a
    matter of law, a breach of trust preventing recovery of the consideration
    for such sale.

4. SAME—VALUE.
    Defendant's evidence that other persons thought the formula valueless
    was incompetent.

5. SAME—WILLINGNESS TO PERFORM.
    Plaintiff's evidence that he was at all times ready and willing to
    perform a part of the contract requiring him to assist in mixing the
    ingredients of the formula, and instruct some one in the process, but
    had never been called upon to do so, was admissible.

6. SAME—GENUINENESS.
    Evidence that defendant had failed to obtain satisfactory results from
    the formula, and that persons whom he sought to induce to form a
    corporation for its manufacture thought the process worthless, was in-
    sufficient to prove that the formula was not genuine.

    Appeal from municipal court of New York.
    Action by Thomas Francis against Timothy J. Campbell.   From
a judgment in favor of defendant, plaintiff appeals.   Reversed.
    Argued before GOODRICH, P. J., and BARTLETT, JENKS,
WOODWARD, and HIRSCHBERG, JJ.

    William R. Dorman, for appellant.
    L. J. Morrison, for respondent.

    HIRSCHBERG, J.   It is impossible to determine from the return
whether the plaintiff has a good cause of action or the defendant a
valid defense, but it is very clear that the rulings on the trial demand
a reversal of the judgment appealed from.   The plaintiff was not
permitted to answer relevant and proper questions in reference to
his claim, while improper evidence was permitted on the defend-
ant's behalf, which may have influenced, and doubtless did influence,
the result.   The plaintiff was employed by one Joseph E. Williams
for some years prior to the latter's death, in manufacturing paints.
After Mr. Williams' death the business was continued by his widow
and the defendant's wife in partnership, the plaintiff working for

the firm as he had formerly done for the deceased, and continuing so to work for a period of over two years. Mrs. Williams having excluded the defendant's wife from the business, a written agreement was executed between the plaintiff and the defendant, by which the former agreed, in substance, to disclose to the latter the formula for making the paints, and to instruct some person to be selected by the latter how to mix the paints pursuant to the formula, in consideration whereof the defendant agreed to pay to the plaintiff the sum of $15 per week during life, and upon the plaintiff's death a like sum to his widow, his present wife, during her life. The agreement recited that the plaintiff had, or claimed to have, a valuable secret process for making paints; that the defendant intended to go into the business of manufacturing and vending paints, and desired to utilize the process in the business which he was about to start. The plaintiff agreed, in so far as he was able, to perform services for the defendant, or for any business organized by the latter, in superintending the mixing of the paints; to take exclusive charge of such work as long as he was physically able to do so, and not to disclose the process to, or to mix or assist in mixing paints for, any other person. It was further provided that the agreement was made upon the express understanding that the formula to be disclosed should be in all respects equal to the formula formerly used by Mr. Williams, and that the defendant should be reasonably satisfied in that regard. Shortly after the execution of the agreement the plaintiff delivered to the defendant a written formula, which he testified was the precise formula used by Mr. Williams, and which he further testified, in answer to questions put by the defendant's counsel, that Mr. Williams had given to him in writing without exacting any promises or prescribing any restrictions as to its use, but with liberty to make a living from it during his life. The written formula so delivered to the defendant was not produced upon the trial, although the defendant admitted that he then had it in his possession, and notwithstanding the fact that the court ruled that he must produce it in obedience to a subpœna duces tecum which the plaintiff had caused to be served upon him. The defendant made nine weekly payments under the agreement, and a portion of the payment for the tenth week, and the action is brought for the purpose of recovering the balance for that week, and the sums unpaid during subsequent weeks. There was no proof that the formula was not equal to that used by Mr. Williams, and no competent proof that it was not a useful and valuable secret process. The defendant never selected any one to be instructed in the mixing process; never, so far as appears, engaged in the contemplated business; and never required or permitted the plaintiff to superintend or take charge of the work referred to in the agreement.

It is a fair inference from the evidence that the process used by Mr. Williams, and which the plaintiff states was the one which he disclosed, was the process which the parties had in mind in the execution of the agreement. Indeed, the counsel for the respondent states in his brief that "for some time before the contract in

question was made the widow of the decedent Williams and the
wife of this respondent formed a copartnership to manufacture paint
under the process formerly employed by the said Joseph E. Wil-
liams; that disputes arose between Mrs. Williams and Mrs. Camp-
bell; and that thereupon the appellant represented that he had the
process, and would reveal it for the consideration expressed in the
agreement." The agreement did not identify the process in any
way beyond what I have suggested in stating its general purport;
nevertheless the defendant was permitted to testify against objec-
tion that the formula delivered was not the one mentioned in the
contract, and that he stopped payment upon making the discovery.
The plaintiff had previously been asked the question whether the
formula which he delivered was the one provided for in the agree-
ment, and his answer in the affirmative was stricken out on the de-
fendant's motion. The plaintiff was not permitted to testify to
his readiness and willingness at all times to perform the contract
on his part, or that the defendant had never called upon him to mix
paint under the process, or to superintend or take charge of the
mixing, although these matters were manifestly material and com-
petent in support of the cause of action. The decision of the court
was based upon the theory that the possession of knowledge of the
process on the plaintiff's part was confidential, arising from his
relation to his former employer, and acquired without authority
to dispose of the secret, and that his disclosure was a breach of trust
and a violation of good morals which the law would not countenance.
The only evidence, however, in any way refuting that of the plaintiff
to the contrary, was given by a witness who was permitted to tes-
tify for the defendant under objection to a conversation had with
Mr. Williams in his lifetime. This evidence was incompetent, the
plaintiff not being present at or connected with the conversation in
any manner. Assuming the plaintiff's evidence as to the circumstan-
ces under which the secret was communicated to him to be true,
he was at liberty to use it or to vend it. Bristol v. Society, 132 N.
Y. 264, 30 N. E. 506, 28 Am. St. Rep. 568. Whether he could tes-
tify to such circumstances in his own behalf may be doubted, but,
the defendant having elicited the proof himself, it is in the case as
a competent and controlling fact. The court said in the case cited
(page 267, 132 N. Y., and page 507, 30 N. E., 28 Am. St. Rep. 568):

"Without denying that there may be property in an idea or trade secret or
system, it is obvious that its originator or proprietor must himself pro-
tect it from escape or disclosure. If it cannot be sold or negotiated or used
without a disclosure, it would seem proper that some contract should guard
or regulate the disclosure; otherwise it must follow the law of ideas, and
become the acquisition of whoever receives it. Peabody v. Norfolk, 98 Mass.
452, 96 Am. Dec. 664."

The case of Kodak Co. v. Reichenbach, 79 Hun, 183, 29 N. Y.
Supp. 1143, is not in conflict, for it relates only to the question of
injunctive relief where the secret has been acquired by a breach of
confidence, and the distinction between knowledge so acquired and
that which is acquired fairly and legitimately is clearly pointed out
by the court at page 193, and emphasized by a reference to the

case of Bristol v. Society, supra. The question as to the plaintiff's rights, in the absence of the evidence to the effect that the process was expressly disclosed by his employer with the right to use it, and which, without such evidence, would present the case of a servant acquiring trade secrets in the course of his employment, and probably for the purposes of such employment only, is not now before the court, and no opinion is expressed thereon. The opinion now expressed on this branch of the case is confined to the assertion that it was erroneous to hold that the plaintiff betrayed his employer's confidence, when all the legitimate evidence was the other way.

The defendant sought to prove that the process was worthless. He swore no witnesses to that effect, but testified himself in such a vague and indefinite manner that no judicial conclusion could be based upon his assertions. These were, in general terms, that he tried, but failed, to form a company to manufacture paints by the process. He said:

"I tried and tried, and finally, in the Astor House, when I started one, I said I had the formula for making these paints, and one of the fellows said that I had a gold brick, and I quit." Again, he said: "Q. Did you ever ascertain what the ingredients of the real process were? A. Of course, I am not an expert in that line of business. I ascertained from the gentlemen I was dealing with. I had a meeting at the Astor House. I stated that before. Q. Did you try to use this process? A. I did. Q. And what did you find out about it? A. I found it was good for nothing, and couldn't use it at all. People I tried to get to use it couldn't. They told me I had bought a gold brick." Again: "Q. Now, Mr. Campbell, were you ever satisfied —were you ever reasonably satisfied—that this formula delivered to you was the formula as provided for in this contract? (Objected to as calling for a conclusion. Objection overruled. Exception.) A. I was, to a certain extent, until when I tried to have this paint made for to be put through the government, and everything went along all right until we went to them, and they had the trade-mark and I had the formula. They laughed at me, and they showed me the original." And still again: "Q. Now, subsequent to Mr. Francis' giving you what he claimed to be the secret process of the old reliable paint, what did you ascertain as to its genuineness or its correctness? A. I ascertained, when I started to make a corporation of some men, they laughed at me, and told me I had bought a gold brick, and they had it themselves from Mrs. Williams."

This is substantially all the evidence given by the defendant in disparagement of the process communicated to him by the plaintiff, or in justification of his claim that he was not reasonably satisfied. It amounts to nothing. Of competent evidence that the process was valueless the case is barren, and this fact is to be taken in connection with the additional fact that, while the contract contemplates and provides not only that the process of mixing paints should be supervised by the plaintiff, but that he should instruct some one how to do the work under the formula, clearly indicating that some personal skill was requisite, nevertheless the plaintiff was never called upon to impart the instruction, or to be present at or to superintend any honest test or attempt to reduce the formula to a practical result. The case is one of considerable importance to the parties, and should be carefully tried. If the plaintiff was possessed of a manufacturing process, both secret and val-

uable, of which he might lawfully dispose; and if, having disposed of it to the defendant, he was at all times competent, ready, and willing to fulfill all the conditions of his agreement, his right to the weekly compensation which the defendant agreed to pay him is undoubted. On the other hand, if there is a serious flaw in his title to the process, or if the process inherently is valueless, so as to reasonably justify the defendant's alleged dissatisfaction, the facts should be manifested by clear, competent, and convincing evidence. The hearsay opinions of undisclosed strangers as to the value of defendant's purchase must be excluded, and the inquiry in that regard confined to definite proof relating to matters of fact within the personal knowledge of witnesses, and calculated to attest the nature of the process, and what it is capable of accomplishing in trade and manufacture under intelligent and skillful management and control.

The judgment must be reversed, and a new trial ordered.

Judgment of municipal court reversed, and new trial ordered; costs to abide the event. All concur.