Mahler v. Sanche.

## Myrtle G. Mahler, et al., v. Hercules Sanche.
### Gen. No. 12,168.

1. TRUSTEE—*when contract does not establish relation of.* An agreement by which the complainant agrees to advance to another, goods, equipment and money to start in the business of selling complainant's instruments, and by which such other agrees to devote his time "to the interests of the business," to make settlements and to pay for advances, etc., does not constitute such other a trustee for the complainant.

2. TRADE SECRET—*when equity will protect.* Equity will protect by injunction a trade secret obtained by an employe in connection with his duties and by him communicated to others who seek to employ the same to the injury of its owner.

3. BILL OF COMPLAINT—*how construed.* The substance, rather than the form of the bill of complaint, will be looked to in order to determine the relief which will be granted and the basis thereof.

4. LACHES—*when defense of, applies, when not.* The defense of

laches does not apply as against a continuing wrong, so far as the right to enjoin its continuance is concerned, but as to the damages, such defense may avail.

Bill for accounting. Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed and remanded with directions. Opinion filed March 21, 1905. Rehearing denied June 23, 1905.

**Statement by the Court.** Defendant in error filed his bill of complaint averring in substance that he had at great expense devised a certain clinical instrument which he called "oxydonor," claimed to be useful in the treatment of disease, for which he had a large sale; that on or about March 15, 1895, he entered into a certain contract with one LaMotte Potter and in pursuance thereof furnished Potter with money and instruments in value amounting to more than $3,000, together with advertising matter and lists of names; that Potter instead of opening an office for sale of complainant's instruments, as the contract provided, organized a corporation through which he proceeded to manufacture and sell a rival and imitation instrument, similar in appearance to the "oxydonor," to which he gave the name "oxygenor," holding it out as an improvement on the original instrument; that Mahler, one of the defendants, combined with Potter and they devised another instrument called "Perfected Oxygenor King," a very close imitation of the "Oxydonor" and which they made and sold with the money provided by complainant and on the reputation of complainant's instruments; that Potter subsequently sold out to Mahler and his associates and has since disappeared; that a copartnership called the Oxygenor Company was formed, of which Mahler and other defendants are members, and that the members of such copartnership are seeking to divert complainant's trade to their own profit, holding out the "Oxygenor" as being the latest improvement on the "Oxydonor" or as equal thereto, claiming that Potter as an employee of complainant became possessed of the complainant's secret formulae. The bill alleges that Mahler has admitted he acquired Potter's rights

under the contract with appellee, and avers that defendants composing the Oxygenor Company took Potter's interest charged with full knowledge of the trust raised by said contract. Complainant prays that the contract of March 15, 1895, be construed as creating a trust against Potter and his assignees, for an order requiring them to turn over to complainant their business, books and accounts, for the appointment of a receiver and for an injunction.

Defendants except Potter answered denying the execution of the contract by Potter and denying that he ever opened an office in Chicago to carry out the terms of such alleged contract. They assert that Potter, knowing the "Oxydonor" to be inert, inoperative and a fraud on the public, devised a different instrument which he called the "Oxygenor," and which he publicly made and sold in Chicago from 1895 to 1898 without any attempt by complainant to claim or assert any adverse right; that in January, 1898, the other defendants formed a copartnership and bought out Potter in good faith and for value without notice of any alleged trust between Potter and complainant, and that Potter thereafter ceased to have any interest in defendants' business. They deny they ever stated that their instruments were those of complainant, or that they acquired from Potter complainant's secret formulae; deny all fraud, all unfair competition, that they have acted contrary to any trust imposed on Potter by his contract with complainant, and aver that complainant has no right to make and sell the "Oxydonor" because that right has been vested by him in a corporation; and that the letters patent of said "Oxydonor" have been held void in a suit relating thereto by a Circuit Court of the United States.

The master to whom the cause was referred to report on the law and the facts reported that the contract between complainant and Potter was valid, that afterward the acts of the parties thereto amounted to a complete abandonment of it, but not to a technical rescission; that complainant had furnished Potter with money and property of the value of more than $3,000, and that Potter failed to comply with the contract. The master concludes that a fiduciary relation be-

tween complainant and Potter is established; that Potter as soon as he got his equipment from complainant violated his contract with the latter and betrayed complainant's confidence; that he manufactured and sold an imitation of complainant's goods calculated to deceive the public, using complainant's trade-marks and testimonials; that Potter received[a] all the contract called for, was the first to violate it and cannot rescind without refunding. The master concludes that Potter in using means furnished by complainant for his own private benefit and violating the terms of the contract violated the trust thereby created; and that subsequently defendants had full knowledge of the fiduciary relation between complainant and Potter and took all Potter's rights in the contract charged with the trust therein raised; that the equities are with complainant and the prayer of the bill should be granted.

A decree was entered declaring plaintiffs in error trustees for complainant liable to account to him as such and restraining them from manufacturing, selling, advertising or dealing in the "Oxygenor," "Improved Oxygenor" and "Perfected Oxygenor King" or other clinical instruments resembling those devised by complainant. The master is directed to take and state an account and to ascertain and report defendants' profits and the damages sustained by complainant through defendants' unlawful acts. Subsequently upon the defendants giving bond in the sum of $3,000 the injunction was granted and other proceedings were stayed.

FRANK P. BLAIR and L. A. GILMORE, for plaintiffs in error.

E. J. HILL, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiffs in error first insist that the contract with Potter of March 15, 1895, created no trust between the parties and hence none between complainant and defendants. By the contract Potter was granted the right to establish an office in Chicago for the exclusive sale of complainant's instru-

ments in certain parts of Illinois. He was to be furnished with goods at a discount of 60 per cent. from the retail price and was to make settlements of account with complainant every thirty days, failing which the agreement was to be invalidated. Complainant agreed to advance funds to equip the Chicago office and to allow Potter a drawing account of $35 per week for four weeks. Complainant's advances were to be repaid within one year with interest at six per cent. Potter was to establish other offices later as business might justify, and was to be furnished with a list of dealers in the state and to be allowed to sell anywhere at retail.

It is clear this contract did not make Potter complainant's trustee, except in a general sense. It was an agreement by complainant to advance Potter goods, office equipment and money to start in the business of selling complainant's instruments. The obligations imposed on Potter were to "diligently devote his time until otherwise agreed, to the interest of the business," to make settlements every thirty days for goods furnished by complainant, to pay within a year for the advances made, and to sell complainant's instruments only under the agreement while it lasted. No definite time was named for which the contract should continue. If Potter failed to meet these obligations and committed a breach of the contract, the law afforded a remedy. We discover nothing in the writing, however, which of itself made him thereafter trustee for complainant. He could be held responsible for any wrongful breach of the contract on his part, and for failure to meet his contract obligations; but we know of no ground upon which he could be regarded as a trustee for complainant under the contract. If he is to be regarded as such trustee in any sense it must be upon grounds independent of the contract.

The bill alleges, however, not only a breach of contract on the part of Potter but also a fraudulent imitation by defendants of complainant's invention. It is averred that using the means furnished by complainant, Potter incorporated the "Cardinal Curative Company" with defendant Mahler as general agent for the manufacture and sale of the so-called

"Oxygenor," a very close imitation not only in name but in fact of complainant's instrument called "Oxydonor;" and that this was held out as the latest and best of complainant's genuine productions. It is averred that with this fraudulent imitation first Potter and then defendants have sought and still seek to supplant complainant's instrument and obtain the trade built up by the use and sale of the original device. There is evidence which tends to support these averments. It appears that defendant Mahler in connection with the other defendants formed a copartnership and bought out Potter and the Curative Company and have since conducted the business in competition with complainant's device. There is evidence tending to show that Potter while employed by complainant on a salary obtained the knowledge or secret of the manner in which complainant's device was made and that he imitated it in the manufacture of the "Oxygenor;" that defendant Mahler obtained the knowledge from Potter and that he with the other defendants have used it in like manner. In Peabody v. Norfolk, 98 Mass. 452-456, it is said quoting from Lord Cranworth in Morison v. Moat, 9 Hare, 241: "There is no doubt whatever, that when a party who has a secret in trade employs persons under a contract express or implied, or under duty express or implied, those persons cannot gain the knowledge of the secret and then set it up against their employer." In that case an employee who had learned the secret and a third party who had made an arrangement to use the secret in conjunction with the employee were restrained from carrying out such arrangements. Potter no doubt by his arrangement with complainant was placed in a relation which enabled him to acquire the knowledge which it appears he made use of for his own benefit and in antagonism to defendant in error. Equity will prohibit one who occupies any position out of which duty to the person with whose interest he has been associated ought in equity and good conscience to arise, from acquiring such antagonistic rights. Davis v. Hamlin, 108 Ill. 39-49; Trice v. Comstock, 121 Fed. Rep. 620. And what he cannot acquire he cannot convey to others.

It is said the bill is not predicated upon the allegations relating to "unfair competition, infringement of trade-mark and fraudulent use of confidential information by Potter," but solely upon an alleged trust created by the contract referred to. The bill is open to that criticism, but it does contain allegations of that character which are amply supported by the evidence. The prayer of the bill is that the rights and interests the defendants acquired in the "Oxygenor" "be declared to have been acquired and to be held in trust" for complainant "under and by virtue of the said agreement of date March 15, 1895." We do not regard defendant in error entitled to the relief prayed for under and by virtue of that agreement, but upon other grounds stated in the bill. Equity looks to the substance rather than the form, and we are inclined to hold that the specific portion of the prayer for relief relating to the contract of March 15 may be treated as surplusage.

Whether Potter committed the first breach of the contract or not, is not in the view we take material, but so far as it may be so deemed, the finding of the master upon the contested question of fact where we cannot say that such finding is manifestly against the evidence, may be deemed conclusive. Siegel v. Andrews, 181 Ill. 350-356.

Plaintiffs in error urge laches in bringing the suit, that complainant waited seven years after breach of the contract of March 15, 1895, and offers no excuse therefor. Such defense is not available to defendants, who are continuing the wrong, as against future infringement. Equity will not extend the limitation of the statute where the latter would bar an action at law. (R. S. chap. 83, sec. 15.) Castner v. Walrod, 83 Ill. 171-175. Complainant claims to have been ignorant of what Potter and defendants were doing until recently. If that be true "no lapse of time, no delay in bringing a suit however long, will defeat the remedy, provided the injured party was during all this interval ignorant of the fraud." Pomeroy's Eq. vol. 2, sec. 917. Whether such ignorance existed or not as a matter of fact the master does not find nor the decree determine. If upon further investi-

gation it shall appear that complainant was ignorant of the fraud practiced and not guilty of laches, then he may be entitled to an account of gains and profits, otherwise not. McLean v. Fleming, 96 U. S. 245-257-8. The court there says: "Cases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits on the ground of delay in asserting his rights even when the facts proved render it proper to grant an injunction to prevent future infringement."

While, therefore, the decree as entered is erroneous, complainant is nevertheless entitled to relief under the averments of the bill and the proofs. He is entitled to an injunction restraining further infringement and it may be to further relief as the proofs may disclose. The decree will therefore be reversed and the cause remanded with directions to the Circuit Court to allow complainant to amend his bill, and for further proceedings not inconsistent with the views above expressed.

*Reversed and remanded with directions.*