JOSEPH PEABODY & others, executors, *vs.* JOHN R. NORFOLK & another.

One who invents or discovers, and keeps secret, a process of manufacture, whether proper for a patent or not, has a property therein which a court of chancery will protect against one who in violation of contract and breach of confidence undertakes to apply it to his own use or disclose it to third persons.

P., having built a mill and furnished it with machinery secretly invented by himself for making gunny cloth by a secret process also of his invention, made a written contract with N., who had acquired confidential knowledge of these inventions while engaged in P.'s service in assisting in the experiments which led thereto, and in building the machinery for the mill. By this contract N. agreed " to serve " P., as engineer of the mill, " so far as required to do so by P.," and not to give anybody information about the machinery which had been used in the experiments or should be used in the mill, but " consider all of said machinery as sacred, to be used only for the benefit of P. or his assigns," and " by all the means in his power prevent other persons from obtaining any information in regard to it such as would enable them to use it; " and P. agreed to pay N. a salary " for above described services," " provided N. shall render his services acceptable to P., and P. or his assigns or agents shall continue the business in said mill or elsewhere." *Held*, that the salary agreed to be paid by P. to N. was a sufficient consideration for N.'s promise so to keep secret P.'s inventions, as well as for the promise to serve as engineer. *Held, also*, that P. was entitled to relief in equity by injunction on C. against proceeding, with notice of the relations between P. and N., to carry out arrangements to have the secret communicated to him by N. and together with N. use it for their own benefit. *Held, further*, that P.'s executors might maintain a bill in equity for such an injunction, filed by their testator and pending when he died.

BILL IN EQUITY, filed January 5, 1867, by Francis Peabody the testator of the present plaintiffs, against John R. Norfolk only; and subsequently amended by a supplemental bill so as to include James P. Cook as a defendant.

The bill set forth that, for many years prior to the filing of the same, Peabody was secretly engaged in making experiments, inventing and adapting machinery, and originating and perfecting a process, to manufacture gunny cloth from jute butts, and at last succeeded in perfecting machinery and a process to do so profitably, such a manufacture having never before been attempted, so far as he knew ; that thereupon he built a large factory on Bridge Street in Salem to carry on such manufacture with such machinery and process, and filled it with such machinery, and invested a large sum in the building, and the machines, material and business ; that, both in all his experiments, and in the construction of the machines for the factory and the setting up and running of the same, he employed Norfolk, who was a machinist, to give his whole time and skill for a salary ; that, in the course of this employment, Norfolk became confidentially possessed of knowledge of the machinery and process, well understanding that such knowledge was to be kept wholly secret; and that, at the solicitation of Norfolk while so employed, Peabody made a written agreement with him, dated June 24, 1865, which was annexed in full to the bill, and the material parts whereof were as follows :

" Said Norfolk agrees to serve the said Peabody as the engineer of his jute factory in Bridge Street so far as he is required to do so by said Peabody, and particularly for that part which relates to the running and construction of the engines and boilers, and of the machinery used in the manufacture of the goods, also in the construction and repairs of the buildings that are required ; " and " agrees that he will not give any parties information, directly or indirectly, in regard to the machinery, or any portions of it," which had been used in the experiments, or should be used in the factory, but " will consider all of said machinery as sacred to be used only for the benefit of said Peabody or his assigns, and that by all the means in his power he will prevent other persons from obtaining any information in regard to it such as would enable them to use it."

" Said Peabody on his part agrees to pay the said Norfolk the sum of one thousand dollars annually in monthly instalments

of eighty-three dollars and thirty-three cents each, to be received in full compensation for above described services, provided the said Norfolk shall render his services acceptable to said Peabody as he has heretofore done, and that said Peabody or his assigns or agents shall continue the business of manufacturing jute goods in said mill in Bridge Street or elsewhere."

The bill further alleged that, on January 1, 1867, Norfolk left his said employment, and had made arrangements with persons unknown to Peabody to build another factory for the manufacture of gunny cloth from jute butts, and to furnish these persons with machinery to be built on the models of the machinery of Peabody, and impart to them Peabody's secret process of manufacturing, and aid and assist them in manufacturing by that process; and that he had taken from the possession of Peabody the original drawings, or copies thereof, of said machinery, and intended to use them in carrying out his said arrangements.

The prayer of the bill was for an injunction to restrain Norfolk from carrying out any such arrangements, or communicating to any person any knowledge of said machinery and process derived by him in the course of his said confidential employment; and to oblige him to return to Peabody said drawings or copies. Upon this bill an injunction was issued in conformity with its prayer.

On June 8, 1867, Peabody filed a supplemental bill, reciting said prayer and the issue of the injunction, and alleging that he had learned for the first time, since the service of the injunction on Norfolk, that James P. Cook was one of the persons with whom Norfolk had made his said arrangements; and further, that Cook and his associates, knowing the relations between Peabody and Norfolk, and knowing the fact of the injunction, were nevertheless proceeding to build machinery to manufacture gunny cloth from jute butts by Peabody's secret process; that Cook was pretending to build the machinery in his own name, upon information, models and drawings obtained from Norfolk before or about the time of the service of the injunction, but that, in fact, long before he ever made any arrangements with Norfolk on the subject, he had notice of all Peabody's

Peabody & others, executors, *v.* Norfolk & another.

relations with and claims on Norfolk; and that, although Norfolk was falsely pretending to obey the injunction, yet in fact he was one of Cook's present associates in the building of such machinery.

The prayer was for an injunction on Cook similar to that issued against Norfolk.

To this supplemental bill Cook filed a general demurrer; and the questions arising thereon were reserved by *Foster*, J., for determination by the full court.

*J. A. Gillis*, for the defendant Cook. 1. It is nowhere alleged that the secret of Peabody's process has been communicated to Cook; only that he is proceeding to build machinery.

2. Norfolk's written promise to keep Peabody's machinery sacred was without consideration, and so void. The salary to be paid by Peabody was for Norfolk's " services " as engineer. Knowledge of the machinery was not given to him in connection with those services. He possessed it before; and there is no allegation that he ever before promised to keep it secret.

3. But if otherwise, the whole written agreement is void for want of certainty. So far as Norfolk has any control of the matter, he has bound himself to serve forever. There is no time limited except the pleasure of Peabody.

4. The agreement is void also as in restraint of trade. As construed by Peabody, Norfolk, having become acquainted with certain useful machinery and processes of manufacture, can never use them except for the benefit of Peabody or his assigns, and then only at Peabody's pleasure. Such an agreement the courts will not sustain. *Mitchel* v. *Reynolds*, 1 P. W. 181. *Horner* v. *Graves*, 7 Bing. 735. *Chappel* v. *Brockway*, 21 Wend. 159. *Ross* v. *Sagdbeer*, Ib. 166. *Alger* v. *Thacher*, 19 Pick. 51. *Taylor* v. *Blanchard*, 13 Allen, 370. Besides, in long course of such employment Norfolk might become unfitted for other business, yet, as he could do this business only at Peabody's pleasure, the public might lose not only his knowledge of the machinery and process, but also his general skill as a machinist.

5. But, assuming that a man may bind himself not to exercise a business, the knowledge of which he has gained confidentially

and has promised so to keep, it must at all events appear that the knowledge is really a secret. All Peabody's allegations of secrecy refer to the invention of the process and making of the machinery; none to the practice of the process and running of the machinery. In the nature of things, in a factory filled with coarse machinery for weaving gunny cloth on an extensive scale, such secrecy is impossible. It could not be said that knowledge of the machinery was a secret, even if all the numerous operatives employed in running it were bound by agreements with Peabody not to disclose their knowledge of it. But there is no allegation of any prohibition on any operative employed to run it, any mechanic employed to repair it, any officer of internal revenue or census whose duty might be to examine it, from communicating or using all their knowledge of it.

6. Further, even assuming that an action at law would lie by Peabody against Norfolk for breach of his agreement, it does not follow that equity will protect Peabody by injunction. *Williams* v. *Williams,* 3 Meriv. 157. *Newbery* v. *James,* 2 Meriv. 450. *Green* v. *Folgham,* 1 Sim. & Stu. 398. There was no surreptitious obtaining of a secret by Norfolk.

If the defendant should deny that there is any secret, the question could be determined only by evidence and exposure of the secret, if it is one. If the court should enjoin the defendant from making certain machinery alleged to be secret or " sacred " to Peabody, and he should then proceed to make machinery which he should allege to be different from the sacred machinery but which Peabody should contend to be the same, a judicial investigation would lead to a similar exposure ; and, after such exposure, it would be against public policy to prohibit one from using machinery so made common to all. *Williams* v. *Williams,* 3 Meriv. 157. *Newbery* v. *James,* 2 Meriv. 450.

Such a method as is sought in this suit, for the protection of such a secret, is against the policy of the patent laws. The allegations of the bill indicate machinery and a process which are patentable. Having made a patentable invention, if Peabody chooses to try to keep it forever secret, and attempt to exclude the public forever from its use, the court, in the language

of *Williams* v. *Williams*, will not " struggle " to protect such a secret, although " bound indeed to protect the owners of patents to the full extent of what was intended by the grant of the patent, because the patentee is purchaser from the public and bound to communicate his secret to the public at the expiration of his patent."

7. Peabody could have no equity as against Cook. There is no privity of contract between them. Cook was no party to Norfolk's agreement with Peabody. In any alleged disclosure to Cook from Norfolk there was no breach of trust; only a breach of contract, at the utmost; for it was not until after Norfolk had acquired the sacred knowledge that he agreed not to divulge it.

8. Finally, whatever rights Peabody may have had on this bill, his executors have none. A secret of a process of manufacture is not property which passes by will or inheritance. If, then, Peabody died without divulging it, Norfolk remains its sole depositary; and in that event it would be contrary to public policy to prevent Norfolk from divulging it, for, unless he should do so, it would be lost to the world. But if Peabody divulged it before he died, it is no longer a secret. If he did so; to whom and on what conditions did he do so? Who are the parties in interest? Did he make these plaintiffs his confidants; and, if so, did he bind them one to another never to communicate it to anybody further?

*W. C. Endicott*, for the plaintiffs.

GRAY, J. It is the policy of the law, for the advantage of the public, to encourage and protect invention and commercial enterprise. If a man establishes a business and makes it valuable by his skill and attention, the good will of that business is recognized by the law as property. If he adopts and publicly uses a trade mark, he has a remedy, either at law or in equity, against those who undertake to use it without his permission. If he makes a new and useful invention of any machine or composition of matter, he may, upon filing in a public office a description which will enable an expert to understand and manufacture it, and thus affording to all persons the means of

ultimately availing themselves of it, obtain letters patent from the government securing to him its exclusive use and profit for a term of years. If he invents or discovers, and keeps secret, a process of manufacture, whether a proper subject for a patent or not, he has not indeed an exclusive right to it as against the public, or against those who in good faith acquire knowledge of it; but he has a property in it, which a court of chancery will protect against one who in violation of contract and breach of confidence undertakes to apply it to his own use, or to disclose it to third persons. The jurisdiction in equity to interfere by injunction to prevent such a breach of trust, when the injury would be irreparable and the remedy at law inadequate, is well established by authority.

In the earliest reported case of this class, Lord Eldon indeed refused to grant an injunction against imparting, in violation of an agreement, the secret, not only of a patent which had been obtained and had expired, and which the whole public was therefore entitled to use ; but also that of making a certain kind of pills, for which no patent had been procured; and stated, as a reason for the latter, that, if the art and method of preparing them was a secret, the court could not, without having it disclosed, ascertain whether it had been infringed. *Newbery* v. *James*, 2 Meriv. 446. But the same learned chancellor afterwards considered the general question as still an open one, whether a court of equity would restrain a party from divulging a secret in medicine, which was not protected by patent, but which he had promised to keep ; and in such a case dissolved an injunction of the vice-chancellor, upon the sole ground that the defendant made affidavit that the secret was not derived from the plaintiff. *Williams* v. *Williams*, 3 Meriv. 157. And in a later case he unhesitatingly granted an injunction against one who by the terms of his agreement with the plaintiff was not to be instructed in the secret, and who had obtained a knowledge of it by a breach of trust. *Yovatt* v. *Winyard*, 1 Jac. & Walk. 394.

Sir John Leach decreed, in one case, specific performance of an agreement by a trader to sell the good will of a business and the exclusive use of a secret in dyeing; and, in another, an ac-

count of the profits of a secret for making a medicine against a son of the inventor, holding it in trust for his brothers and sisters. *Bryson* v. *Whitehead*, 1 Sim. & Stu. 74.　*Green* v. *Folgham*, Ib. 398.

In a more recent case, Morison, the inventor and sole proprietor of a medicine, for which no patent had been obtained, entered into partnership with Moat, to whom he communicated the secret of making the medicine, but did not make the secret a part of the assets of the partnership, and reserved it to himself as against all other persons, and Moat covenanted not to reveal it to any person whomsoever; by subsequent agreement Morison's sons and a son of Moat were admitted as partners in the business; and the secret was surreptitiously obtained from Moat by his son.　After the death of both the original parties, on a bill brought by Morison's sons, who were also legatees of the secret, against Moat's son, Vice-Chancellor Turner, in an elaborate judgment reviewing all the English authorities, granted an injunction restraining the defendant from using the secret in any manner in compounding the medicine; and refused to restrain him from communicating the secret, simply for want of any allegation or evidence of an intention to communicate it.　*Morison* v. *Moat*, 9 Hare, 241.　The defendant appealed; but the order was affirmed; and Lord Cranworth, delivering the opinion of the court of appeal, said : " The principles that were argued in this case are principles really not to be called in controversy. There is no doubt whatever, that when a party who has a secret in trade employs persons under a contract express or implied, or under duty express or implied, those persons cannot gain the knowledge of the secret and then set it up against their employer." 21 L. J. (N. S.) Ch. 248.

Mr. Justice Story states the doctrine in the broadest terms, that " courts of equity will restrain a party from making a disclosure of secrets communicated to him in the course of a confidential employment; and it matters not, in such cases, whether the secrets be secrets of trade or secrets of title, or any other secrets of the party important to his interests." 2 Story Eq. § 952.　In this court, it is settled that a secret art is a legal

subject of property; and that a bond for a conveyance of the exclusive right to it is not open to the objection of being in restraint of trade, but may be enforced by action at law, and requires the obligor not to divulge the secret to any other person. *Vickery* v. *Welch*, 19 Pick. 523. *Taylor* v. *Blanchard*, 13 Allen, 373, 374. In *Jarvis* v. *Peck*, 10 Paige, 118, such a bond was held valid in equity. And by the Gen. Sts. *c.* 113, § 2, this court has not only jurisdiction in equity of suits for enforcing and regulating the execution of trusts, or for the specific performance of written contracts by and against either party and his representatives and assigns, but also full equity jurisdiction, according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law.

The contract between Peabody and Norfolk was, on the part of Norfolk, to serve Peabody as engineer in his jute factory so far as required, and particularly in the construction and running of the machinery, and not to give any third person information directly or indirectly in regard to any portion of the machinery, but to " consider all of said machinery as sacred to be used only for the benefit of said Peabody or his assigns, and by all means in his power prevent other persons from obtaining any information in regard to it such as would enable them to use it;" and, on the part of Peabody, to pay Norfolk an annual salary " in full compensation for the above described services," provided he should render his services acceptable to Peabody as he had theretofore, and Peabody or his assigns should continue the business of manufacturing jute goods. The " above described services " clearly include, not only the affirmative promise to serve as an engineer, but the negative promise not to disclose the secret, and to do his best to conceal it; and the salary is a legal and sufficient consideration for all the agreements of Norfolk.

The plaintiffs do not ask for specific performance of Norfolk's promise to serve as engineer. It is therefore unnecessary o consider whether that promise is limited in point of time or determinable at pleasure, or is capable of being specifically

enforced. Whatever may be the limit or effect of his obligation to serve, he is bound by his contract never to disclose the secret confidentially imparted to him during the term of his actual service. And this part of his agreement may be specifically enforced in equity, even if the other part could not. *Lumley* v. *Wagner*, 1 De Gex, Macn. & Gord. 604.

The bill alleges that the invention and the process of manufacture have been kept secret, and that the secret is the property of the original plaintiff and of great value to him, and was confidentially imparted to Norfolk ; and on demurrer these allegations must be taken to be true. Although the process is carried on in a large factory, the workmen may not understand or be intrusted with the secret, or may have acquired a knowledge of it upon the like confidence. A secret of trade or manufacture does not lose its character by being confidentially disclosed to agents or servants, without whose assistance it could not be made of any value. Even if, as is argued in support of the demurrer, the process is liable to be inspected by the assessor of internal revenue or other public officer, the owner is not the less entitled to protection against those who in, or with knowledge of, violation of contract and breach of confidence, undertake to disclose it or to reap the benefit of it. The danger of divulging the secret in the course of a judicial investigation affords in our opinion no satisfactory reason why a court of equity should refuse all remedy against the wrongdoers.

The supplemental bill alleges, and the demurrer admits, that Cook, with notice of the relations between Peabody and Norfolk, has made arrangements to have the secret communicated to him by Norfolk, and together with him to use it for their own benefit. Upon such a state of facts, Cook has no better equity than Norfolk.

The executors of the will of the original plaintiff succeed to his rights, and appear on the allegations of the bills to be entitled to the relief prayed for. *Morison* v. *Moat*, above cited.

*Demurrer overruled.*