FEASEL et al. v. NOXALL POLISH MFG. CO. et al.

(District Court, E. D. Pennsylvania. October 21, 1920.)

No. 1875.

1. **Injunction** &#9756;56—**To prevent wrongful use or disclosure of trade secret.**

   Where complainant, who had devised a process or formula for making a furniture polish, which he held as a trade secret, disclosed such formula to defendant under a contract by which defendant was to manufacture the polish and in reliance on its agreement not to divulge the formula, nor make use of it, except for purposes of the contract, but defendant continued to use it, and to make and sell the polish after the contract had been terminated, complainant *held* entitled to an injunction.

2. **Trade-marks and trade-names** &#9756;68—**Representing defendant's product as complainant's, unfair competition.**

   A defendant, which not only wrongfully used a secret formula of complainant in making a furniture polish, but sold the product under its own label, representing it, however, as the same as that made by complainant, *held* chargeable with unfair competition.

In Equity. Suit by Harry L. Feasel and H. L. Feasel's Laboratory, Incorporated, against the Noxall Polish Manufacturing Company and others. Decree for complainants.

&#9756;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Francis F. Burch, of Philadelphia, Pa., and Kenyon & Kenyon, of New York City, for plaintiffs.

Evans, Forster & Wernick, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. In looking for a support upon which to base the necessary fact findings to enable us to determine this cause, the trial supplies us with a footing which is more unstable than a quicksand and more changeable than shifting bars. A few general outline facts give us a little fast land upon which to stand. Beyond this all is quagmire.

The plaintiff is the inventor, in the sense of having discovered or come upon a way to make a furniture polish. He named his product "High Luster Finish," and designated it "H. L. F." The recipe for making this polish and the process of making it was that conferred by right of discovery. He enjoyed a practical monopoly, because of his knowledge of this process and the ignorance of all others. This right of property continued exclusive as long as his knowledge was exclusive. He could, in consequence, retain his proprietary right only by keeping his process from the knowledge and use of others.

Assuming patentability, he might have secured this exclusive right (for a limited time) by law. The same law which granted him the right would have protected him in its enforcement. The price which the law exacted for the aid thus given him was the disclosure of his process for the benefit of the public after his patent had expired. This aid of the law he did not seek, because he was unwilling to pay the price. He wished, however, notwithstanding, to secure his monopoly. The keeping of his process a secret was the only way this could be done. He was without the equipment of manufacture, and without financial means to provide for one.

The defendant company was a manufacturer of polishes. It had a manufacturing plant, and the means to supply the product to the market. The plaintiff could find the purchasers to whom to make the sales, thus creating a market. This suggested a business combination, so that the defendant might manufacture the plaintiff's product, for which the plaintiff was to find sales. It necessitated a disclosure of the secret process. The combination was made. Its continuance was interrupted by the thought of what the situation would be when the contract between the parties was at an end with respect to the control of the trade built up. The plaintiff contributed, to the building up of that trade, his product and his efforts to create a market. The defendant contributed its capital, manufacturing skill, and business reputation. If the product sold was wholly known as the plaintiff's product, the good will established would be his, and he would secure the continuance of the trade. If the product was known to the trade as the manufacture of the defendant, the defendant would have a call upon the trade for the continuance of its custom.

The name under which it was sold would largely impress the trade—whether it was sold as a Noxall polish or as Feasel's "High Luster Polish." The former was the name by which defendant's product was known, and the latter the name given to plaintiff's product. If what

was jointly sold became identified as a Noxall product, plaintiff would be compelled to build up a new trade for it; if it was known as a Feasel product, he could retain the trade already established. Each party in consequence attached importance to the label, and to which of them kept in touch with the trade, and each insisted that prominence be given to his own name, and protested against any being given to the other.

The plaintiff was persistent in his demand that the product be wholly known as his and as manufactured for him. The name of the manufacturer was of no moment. The defendant was equally insistent that the product was its manufacture, and should be known as such, although made in accordance with the plaintiff's formula. The differences, which because of this arose, resulted in formal written notice from the plaintiff on December 9, 1918, of a cancellation of the contract by him. Following this, each of the parties sold a polish.

Thus far there is no dispute over the facts. The complaint made by the plaintiff is twofold. One is that the defendant unlawfully appropriated to its own use his property by making and selling "High Luster Polish" made in accordance with his formula. This was in violation of his rights, because his process was a secret process, disclosed to defendant in confidence, and, further, because its continued use of his process was a flagrant breach of its contract not so to do.

The other branch of the complaint was that the defendant was guilty of unfair competition, in that it was falsely imposing upon the public its make of polish as his make. The plaintiff asks to have the defendant restrained from using his process, and from disclosing it, and from resorting to the methods of unfair competition, of which complaint is made.

The main difficulty in plaintiff's way he has created for himself, or it has been made for him by one of his witnesses. He undertook to prove, and testified himself to the averred fact, that the defendant had placed over the labels on bottles containing "High Luster Polish" labels proclaiming the product to be Noxall product, and had placed the product with the changed labels upon the market.

The plaintiff further testified that he had discovered the fraud by finding the bottles upon the shelves of the store of a retail dealer in York. This fact (if it had been one) was highly significant. It was proof that defendant had sold plaintiff's product, and it was of still greater significance, in that it convicted the defendant of untruthful statements in testimony heretofore given. The plaintiff very dramatically described the circumstances under which he had "discovered" the fraud. In his testimony he was fully and in detail corroborated by a witness, whom he called to support him in the statement he had made. It developed subsequently that this very witness had himself placed the labels on the bottles, and there was no satisfactory evidence that the defendant had anything to do with it.

The difficulty to which we referred as one created by the plaintiff is that he had sought to establish as a fact an act of the defendant which, if its act, went far toward establishing his case. The whole of this testimony was baseless in fact. There is no justification for a finding that the testimony was false, in the sense that the plaintiff knew of

its falsity, and we acquit him of any intention to deceive the trial court. The fact is, however, that the court was very deeply impressed by this testimony, and in grave danger of being misled by it. We cannot acquit the witness called to corroborate him of any want of knowledge. The only explanation which can be made of his conduct in not only permitting a wrong impression to go uncorrected, but in supporting the testimony which made it, is the curious moral obliquity produced by partisanship in the case of some witnesses. . His only explanation of his failure to testify to the real fact is that he was not asked.

The difficulty created, to which we again refer, is that this episode creates a want of confidence in the correctness of any finding based upon any of the other testimony in the cause. A similar difficulty has been created by the defendant for itself. This calls for the characterization of a shiftiness in the defense.

The defense, as finally presented (but not until final argument), is that the defendant had with the plaintiff a contract which gave it the right to manufacture and sell the plaintiff's polish. This contract the plaintiff, without right or justification, had attempted to terminate on December 9, 1918. The defendant claimed the contract to be still in force, and acted upon it to the time of the filing of the answer, continuing the manufacture and sale of plaintiff's product, as it was its right to do. When the answer came to be filed, however, the defendant decided that, although not bound so to do, it would accept the plaintiff's termination of the contract, and thereafter it had neither manufactured nor sold "High Luster Polish," beyond the sale of stock on hand, which the contract gave them the right to do.

An elaborate argument is addressed to us to show that this is consistent with the averments of the answer and the testimony of the defendant on the motion for a preliminary injunction, and the inconsistencies between this defense and the testimony given at the trial are explained away by the fact that the witnesses did not distinguish, and did not have their attention called to the distinction, between acts before and after the date of the filing of the answer. We do not feel called upon to make further comment upon this feature of the case than to make the finding that there are glaring inconsistencies between this defense and that presented in the testimony on behalf of the defendant, and that the explanation given of these inconsistencies is not accepted.

The motion for a preliminary injunction was denied, with the denial before the court that the defendant, after the contract had been called off by the plaintiff, had either made or sold the plaintiff's product, with the statement, on the contrary, that it had scrupulously confined itself to its own make of polish. The position of the defendant may have been misunderstood by the court, but there could be no mistaking what the court understood the defense to be. If the court was wrong, an opportunity to set it right was afforded by the trial. So far forth from any correction being attempted, the thought that this was the defense was confirmed by all the occurrences of the trial.

As a consequence, when the evidence was pronounced closed on

both sides, as the main issue of fact was whether the polish which the defendant was making was or was not substantially identical with the plaintiff's product, the court asked if an analysis would establish the fact, and a continuance was granted to give the parties an opportunity to have a further hearing; the evidence to be taken, if either party asked it, in camera. It now appears that, for at least six months after the contractual relations between plaintiff and defendant had ended, the defendant continued to make and sell the plaintiff's product, employing itself in the meanwhile with experimentations in the effort to find a substitute.

Our final comment upon the acts of these parties is that the only satisfactory decree to be entered (if such were possible) is that it be one against each of them, without being in favor of either. As it is, we must content ourselves with a finding of the facts set forth below, with a statement of the conclusions of law based thereon. It may be added to the foregoing that the position taken by the defendant, that the averments of the answer are to be taken as admitted for want of a replication, is not tenable since the promulgation of rule 31.

The further point sought to be made that the principle which controls the ruling is that which governs in cases of contract in restraint of trade is based upon a misconception of the governing principle. The doctrine of the law which is really applicable is the equitable doctrine that trust and confidence may not be abused and the abuse of them may be restrained. The doctrine further invoked, that equitable remedies are always of grace, and never of strict legal right, is an accepted doctrine. The only application it is asserted to have, however, is in view of the possible misuse of a decree in favor of the plaintiff. All such danger is avoided by the decree made. The further doctrines invoked, that the aid of a chancellor will not be given in doubtful cases, and that equity will not make amends for past injuries, are rendered inapplicable in this cause—the first by the fact findings made, and the second by the situation presented, which is that equity has jurisdiction of the cause to award injunctive process, and, having that jurisdiction, will proceed to afford full redress for all the injuries done. The argument urged, that the fact that the defendant had been detected in the violation of the confidence reposed in it, and of the obligations of its contract, would act as a deterrent from the commission of further wrongs, is not an argument of sufficient strength to induce us to withhold the injunction prayed for.

### Findings of Fact.

[1, 2] 1. The plaintiff had a process or formula for making the furniture polish, known as "High Luster Finish," which was his property, and preserved by him as a trade secret.

2. This formula was made known by the plaintiff to the defendant in trust and confidence, to enable it to manufacture the polish under the terms of the contract between the parties, and in reliance upon its promise not to divulge the secret to any one, nor use the formula, except for the purposes of the agreement.

3. The defendant used the formula by making "High Luster Finish"

in accordance therewith, and sold the same for more than six months after December 9, 1918.

4. The defendant was guilty of unfair competition, in that it made and sold "High Luster Finish" under the name of Noxall, thereby securing to its own product the benefit of whatever merits the plaintiff's product possessed.

5. The defendant was guilty of unfair competition, in that it represented the polish sold by it under the name of Noxall as the polish made by the plaintiff, thereby diverting to itself the value of the good will which the plaintiff had established for his product.

## Conclusions of Law.

The plaintiff is entitled to a decree enjoining and restraining the defendant—

1. From making a polish according to the formula disclosed to it by the plaintiff.

2. From disclosing to any one the secret process or formula of the plaintiff.

3. From representing any polish made by it to be "High Luster Finish" or substantially identical therewith.

A decree, in accordance with this opinion and these findings, and allowing costs to the plaintiff, may be submitted. Findings of fact 4 and 5 have been made, notwithstanding a possible inconsistency between them, because of the distinction that it is unfair in the defendant to build up a reputation and retain it for Noxall upon the merits of what "High Luster Finish" will do, and it is likewise unfair for the defendant to secure for Noxall the trade which "High Luster Finish" may have built up.

There are two practical difficulties in the way of a satisfactory determination of cases of this general character. One is to guard against giving to the owner of a trade secret more than that to which he is entitled. He is not entitled to the aid of the law in preserving his secret from becoming known to the public. All he is entitled to is protection against a breach of contract or of confidence on the part of any one to whom he has confided the secret on trust. The other difficulty is to guard against the possibility that a plaintiff may make an unfair advertising use of a decree in his favor. Because of this the decree will be limited to the defendant and to such of its agents and employees to whom it may have made known the secret, and will warn the plaintiff against making any advertising use of the decree.