93 F.Supp. 131 (1950)
AKTIEBOLAGET BOFORS
v.
UNITED STATES.
Civ. No. 1718.
United States District Court District of Columbia.
October 10, 1950.
*132 George Morris Fay, U. S. Atty. and Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., for defendant, for the motion.
C. E. Rhetts and Warner W. Gardner, Washington, D. C., for plaintiff, opposed.
HOLTZOFF, District Judge.
This case involves the nature of the property in a secret process. Specifically the question presented is whether a person to whom a secret process is lawfully disclosed in connection with a license to use it, is guilty of a tortious act if he uses the process beyond the scope of the license. The matter comes before the Court on a motion to dismiss the complaint.
It appears from the allegations of the complaint that the plaintiff, a Swedish corporation, was the owner of a secret process for the manufacture of an antiaircraft weapon known as the "Bofors gun". On July 21, 1941, the plaintiff entered into a contract with the United States whereby it granted to the Navy Department of the United States an exclusive license to make, use, and have made the Bofors gun in the United States "for the United States use". By this contract the plaintiff also agreed to disclose the secret process to the Navy Department. The latter, in turn, undertook to pay to the plaintiff the sum of $600,000 as compensation for the license and the disclosure. The plaintiff disclosed the secret process to the United States Naval Attache at Stockholm, and received the payment provided for in the contract. Subsequently the United States manufactured large quantities of the Bofors gun and furnished many to allied and friendly powers under the so-called Lend-Lease Act, 22 U. S.C.A. § 411 et seq., the China Aid Act, 56 Stat. 82, the Greek-Turkish Aid Authority, 22 U.S.C.A. § 1401 et seq., and other similar statutes. The plaintiff claims that this course of conduct on the part of the United States was a violation of the license, which was limited to the manufacture of the guns "for the United States use". The plaintiff objected to this alleged abuse of the license, but its protests were of no avail.[1]
This action is brought against the United States to recover damages for what is claimed to be an illegal use of the secret process in excess of the limitation of the license. The amount of damages prayed for is $2,000,000.
*133 The Government moves to dismiss the complaint on the ground that this Court is without jurisdiction of the action, in that the claim sought to be asserted is one for breach of contract, while the jurisdiction of this Court in actions against the United States for breach of contract is limited to claims involving not more than $10,000. The Court of claims alone has jurisdiction over actions against the United States for breach of contract involving an amount in excess of that sum.[2] The plaintiff contends, on the other hand, that the action sounds in tort and that this Court has jurisdiction under the Federal Tort Claims Act.[3] The question to be decided, therefore, is whether the complaint sets forth a cause of action in tort.
Property rights in an unpatented secret process are circumscribed and limited. The owner of such a process has a right not to have the secret made public by theft, by bribery or stealth, or by breach of a confidential relation, such as that of an employer and employee. The person who obtains the secret in such an illegal manner commits a tort.[4] So long as the secret remains intact, any one who invades it, is guilty of a tortious act.
On the other hand, once a secret process becomes public, provided the disclosure is not obtained by unlawful means, the property rights in the secret come to an end. The information that had previously been private is thrown into the public domain. If the person who originally owned the secret desires to maintain a monopoly, he must have recourse to the patent laws and obtain a patent on his invention, if, indeed, it is patentable. The very object of the patent law is to grant a monopoly to an inventor for a limited period in exchange for a public disclosure of his invention and compliance with the other requirements of the patent statutes. Consequently no tort is committed by one who uses the information previously embraced in a secret, if the disclosure was obtained by lawful means.
Thus, in Gayler v. Wilder, 10 How. 477, 481, 493, 13 L.Ed. 504, Chief Justice Taney made the following observation: "The inventor of a new and useful improvement certainly has no exclusive right to it, until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued."
In Brown v. Duchesne, 19 How. 183, 195, 15 L.Ed. 595, Chief Justice Taney reiterated the same thought in the following language: "* * * this court has always held that an inventor has no right of property in his invention, upon which he can maintain a suit, unless he obtains a patent for it, according to the Acts of Congress; * * *"
A decision on all fours with the case at bar is Fulmer v. United States, D.C.N.D. Ala., 83 F.Supp. 137. There, too, the plaintiff sued the United States for damages for use of an unpatented invention, which was confidentially disclosed to Government officers. He sought to sustain his claim under the Federal Tort Claims Act. The Court held that the allegations did not establish a tort and that, therefore, the action did not lie in the District Court.
This doctrine has been adopted by the "Restatement of the Law of Torts," Section 757, which contains the following pointed summary of these principles of law: "It is the employment of improper means to procure the trade secret, rather than the mere copying or use, which is the basis of the liability under the rule stated in this Section."
In the light of the foregoing considerations, the conclusion necessarily follows that the complaint does not set forth a cause of action in tort and that, therefore, this action *134 may not be maintained under the Federal Tort Claims Act. Whether the complaint sets forth a cause of action for breach of contract need not be determined at this time. It may be perhaps argued with considerable cogency that the phrase "for the United States use" includes use by powers engaged in a common enterprise with the United States and that, therefore, there is not even a breach of contract. This question, however, is not presented for determination at this time.
Motion to dismiss the complaint is granted.
NOTES
[1] Attached to the complaint as an exhibit is a rather picturesque letter, reading as follows:
 "The White House
 "Washington
 "January 21, 1942.
"Alexander Proudfit, Esquire
"64 East 86th Street
"New York, N. Y.

"Sir:
"I have your letter of December 30 telling me to tell the Army and Navy to stop manufacturing Bofors guns for the use of the United Nations in the defeat of Germany and Japan.
"I can only say to you that if I had a client who asked me to do what you are asking your Government to do I should tell him to jump in the lake.
 "Very truly yours,
 "(signed)
 "Harry L. Hopkins."

[2] 28 U.S.C.A. § 1346(a) (2), and § 1491.
[3] 28 U.S.C.A. § 2671 et seq.
[4] A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531, 536-539; Booth v. Stutz Motor Car Co. of America, 7 Cir., 56 F.2d 962; Feasel v. Noxall Polish Mfg. Co., D.C.E.D.Pa., 268 F. 887, 891; Peabody v. Norfolk, 98 Mass. 452, 96 Am.Dec. 664; Radium Remedies Co. v. Weiss, 173 Minn. 342, 217 N.W. 339; Steel Car Co. v. Standard Steel Car Co., 210 Pa. 464, 60 A. 4.