**WILLIAM A. MEIER GLASS CO., Inc. v. ANCHOR HOCKING GLASS CORP.**

Civ. No. 8399.

United States District Court
W. D. Pennsylvania.

Jan. 22, 1951.

T. Robert Brennan, of Brennan & Brennan, Pittsburgh, Pa., for plaintiff.

Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

This action involves the nature of property rights in a "loop" design which was a decoration on glassware and allied glass products manufactured by the plaintiff. The cause of action is based on deceit and breach of trust of the defendant in obtaining, using, adopting, and marketing said "loop" design.

The matter comes before the Court on motion to dismiss the complaint.

In considering a motion to dismiss, the complaint must be viewed in a light most favorable to the plaintiff, and should not be dismissed unless it appears to a certainty that plaintiff would not be entitled to relief under any state of facts which could be proved in support of the plaintiff's claim, and no matter how likely it may seem that the plaintiff would be unable to prove its case, it is entitled upon averring a claim to an opportunity to prove it. The truth of all facts well pleaded is admitted, including facts alleged on information and belief. Frederick Hart & Co., Inc., v. Recordgraph Corp., 3 Cir., 169 F.2d 580.

It appears from the allegations of the complaint that the plaintiff and defendant are engaged to some extent in competitive business, more particularly in the designing of decorations and decorative patterns for glassware and glass products, and the sale of said glassware and glass products. At some time in the year 1948, plaintiff had originated a "loop" design as a decoration for glassware and allied glassware products, and that said "loop" design was new and novel in the whole glassware trade. That the plaintiff had commenced the manufacture of glassware products, which contained said "loop" design, and which was to be featured by the plaintiff for sale to the public in the year 1949. In addition to the foregoing, the plaintiff had also developed a novel flame polishing process for which a patent application had been filed, and which it sought to bring to the attention of the defendant and other glassware companies. In order to stimulate the acceptance of the flame polishing process in the trade, the plaintiff sent to the defendant and other glass companies sample glassware which contained the original "loop" design for the sole purpose of demonstrating the merits of the flame polishing process which was exemplified in the "loop" design.

That the plaintiff had not yet marketed, sold, or made available to the public or the

glassware trade its merchandise which contained the "loop" design, and as a result of the communication had by the plaintiff with the defendant, representatives of the defendant were permitted to visit the manufacturing plant of the plaintiff and to be informed in detail as to the flame polishing process. That when the conferences and consultations were held between the representatives of the plaintiff and the defendant, the defendant was specifically instructed that no use was to be made of the "loop" design which appeared on the plaintiff's glassware, and that the "loop" design was being used solely to demonstrate the flame polishing process of the cut glass design.

That in the glassware industry in the United States it is the common and accepted practice of manufacturers and designers of glasses and allied glass products to stimulate its sales and introduce new products at glass shows sponsored by the glassware industry in many centrally located cities and to invite purchasing agents to attend said shows for the purpose of obtaining orders.

That it was determined at the glassware show held in the City of Pittsburgh, Pennsylvania, on January 10, 1949, that the defendant was exhibiting glassware products which contained the identical "loop" design which appeared on the glassware of plaintiff. That the glassware products of the defendant were priced materially lower than the products of the plaintiff, each of which contained the identical "loop" design. That this display was also made by the defendant at all the major glass and houseware displays throughout the United States in the year 1949.

The plaintiff further contends that as a result of the actions of the defendant, it has been damaged in that it suffered a loss of profits and a partial destruction of its business, good will, and reputation due to the actions of the defendant.

■ The plaintiff's design being novel and original could have been the subject of a design patent since the originator of a new and novel design for an article of merchandise, who desires to prevent the right to free use and copying by others, is afforded the protection of the patent laws. 35 U.S.C.A. § 73.

During the term of a design patent, the owner is given the exclusive right to use his design, and infringers can be made accountable in law for their actions. 35 U.S.C.A. § 74.

■ Furthermore, the plaintiff would have been entitled, in order to protect his design, to invoke the protection of the copyright laws of the United States since the creation would fall within the terms of the Copyright Act, under which it would be included as works of art; models or designs for works of art. Section 5(g) of the Copyright Act of 1947, 17 U.S.C.A. § 5(g); 17 U.S.C.A. § 207; Section 201.4(b) (7) of the Rules and Regulations of the Federal Register, following 17 U.S.C.A. § 207; 17 U.S.C.A. § 53.

■ Since the plaintiff did not secure statutory protection either under the Patent Laws or Copyright Laws, the plaintiff's right to relief must be determined by reference to common law.

One of the great attributes of this country has been the inventive genius of its people. The broad vision of the law has developed to encourage inventors and to protect inventions and trademarks of business.

■ It is well established that a common law property right may be abandoned by conduct from which such intent may be inferred. A publication is defined as the act of making public or known, as by offering for sale or disposition the subject matter in question. A general publication consists of such a disclosure, communication, circulation, exhibition, or disposition of such matter tendered or given to one or more members of the general public as it implies abandonment of the property right or its dedication to the public. 13 C.J. 974 et seq.; 18 C.J.S., Copyright and Literary Property, § 13, page 150 et seq.

■ Under the common law, the creator has an exclusive property right in designs for works of ornament or utility until publication is permitted. Fashion Originators Guild of America v. Federal Trade Com-

268

mission, 2 Cir., 114 F.2d 80, affirmed 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949; American Dirigold Corp. v. Dirigold Metals Corp., 6 Cir., 125 F.2d 446.

In the absence of a statutory copyright or patent, no person has the monopoly in any idea, device or process, which has not been effectively kept a secret, and competitors may freely copy and imitate them without liability to the originator. The imitation of the designs of another, where they have not been effectively kept a secret, is a socially useful type of competition. Millinery Creators' Guild, Inc. v. Federal Trade Commission, 2 Cir., 109 F.2d 175; Restatement, Law of Torts, § 757, Comment (a).

The question, therefore, resolves itself into whether the plaintiff abandoned the property right which it had in the "loop" design during any of the period of time referred to in the complaint.

I have no difficulty in resolving the question subsequent to January 10, 1949, since the plaintiff placed its glassware, cut with a "loop" design, on public exhibition in Pittsburgh, Pennsylvania, on said date. It was offered for sale and constituted a general publication whereby the plaintiff abandoned and surrendered any common law property right it may have had in said design. On said date any competitor was free to imitate and copy the design, and engage in active competition with the plaintiff. J. C. Penny Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949; Fashion Originators Guild of America v. Federal Trade Commission, supra.

However, the actions of the defendant present a more involved question as to the publication, if any, and the abandonment of the common law property rights which the plaintiff had in said design prior to January 10, 1949. Since the relief asked by the plaintiff is of a general equitable nature and does not arise under the patent or copyright laws of the United States, the action is based upon the principle that equity will not permit one to unjustly enrich himself at the expense of another. It involves over-reaching and taking an unconscionable advantage.

Where an unjust enrichment has been gained, the law has adopted the quasi-contract to raise up an obligation in order to promote justice. Bailis v. Reconstruction Finance Corp., 3 Cir., 128 F.2d 857.

The doctrine of unjust enrichment or recovery in quasi-contract is applicable where the product of an inventor's brain is knowingly received and used by another to his own great benefit without compensating the inventor. It applies to situations where as a matter of fact there is no legal contract, but where the person sought to be charged is in possession of money or property which in good conscience and justice, he should not retain but should deliver to another. Schenley Distillers Corp. v. Kinsey Distilling Corp., 3 Cir., 136 F.2d 350; Matarese v. Moore-McCormack Lines, Inc., 2 Cir., 158 F.2d 631, 170 A.L.R. 440; Pullman's Palace-Car Co. v. Central Transportation Co., 171 U.S. 138, 18 S.Ct. 808, 43 L.Ed. 108; 1 Williston on Contracts, Revised Edition, 1936, § 3, Page 9; Restatement, Law of Torts, Volume 4, page 4.

Where the inventor of an unpatented article not yet on the market exhibits it to a manufacturer for the sole purpose of selling or leasing it, there is an implied agreement by the manufacturer not to use anything of novelty disclosed by the devise for its own benefit. Gilbert v. General Motors Corp., Inc., D.C., 41 F.Supp. 525, affirmed, 2 Cir., 133 F.2d 997, certiorari denied 319 U.S. 743, 63 S.Ct. 1031, 87 L.Ed. 1700; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, certiorari denied 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395; Becher v. Contoure Laboratories, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752.

Consequently, no tort is committed by one who uses the information previously embraced in the secret if the disclosure was obtained by lawful means. Aktiebolaget Bofors v. United States, D.C., 93 F. Supp. 131.

It is the employment of improper means to procure the trade secret, rather than the mere copying or use, which is the basis of the liability under the law. Restatement, Law of Torts, § 757; Booth v. Stutz Motor

Car Co. of America, Inc., 7 Cir., 56 F.2d 962.

■ Consideration must next be given to the proposition that the law will not imply a promise to pay for every voluntary service; that a quasi-contract will not be implied unless a disclosure is made with expectation of payment or under circumstances of a confidential relationship. Restatement of the Law, Restitution, §§ 2 and 112.

■ The doctrine of unjust enrichment does not comprehend that one may induce another unknowingly to exploit an inventive concept without giving him an opportunity to negotiate a contract for its use, or excercise volition as to whether or not to accept its benefits, and then, after knowledge of claimed invention had been kept from him by silence or artifice, hold him liable for substantial damages because of appropriation. An essential element of the doctrine as applied in patent cases is that an appropriation of another's ideas has been knowingly or wrongfully made. Huszar v. Cincinnati Chemical Works, Inc., 6 Cir., 172 F.2d 6.

I cannot construe the plaintiff's conduct in delivering the "loop" design to defendant for demonstration of the flame polishing process as being officious. By no stretch of the imagination was defendant corporation induced unknowingly to adopt the design. To the contrary, the defendant sent agents to plaintiff's factory to view the polishing process and were given an additional sample containing the "loop" design. This was not a case of a new idea coming to the defendant corporation in complete passivity and ignorance. Defendant sought it out and used it with full knowledge that it was plaintiff's trade secret.

Whether the "loop" design contained on samples furnished defendant was a "disclosure" in the sense indicated by the defendant, is highly dubious. There is nothing to indicate that plaintiff made or intended to make an unrestricted disclosure of the design.

■ The actions of the defendant prior to January 10, 1949, when the complaint is viewed in the light most favorable to the plaintiff, place the defendant in an environment which, in my judgment, falls within the legal doctrine of limited publication.

■ A limited publication will not abridge the rights of the owners any further than necessarily results from the nature and extent of such limited use as he has made or allowed others to make of his work, and which expressly or impliedly precludes its absolute dedication to the public. Werckmeister v. American Lithographic Co., 2 Cir., 134 F. 321, 324; 13 C.J. 977, para. 43; 18 C.J.S., Copyright and Literary Property, § 13; American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208; Patterson v. Century Productions, Inc., 2 Cir., 93 F.2d 489.

It may be that plaintiff suffered a financial loss as a result of the defendant having on its glassware the "loop" design which made possible the sale of the defendant's products with said design in the year 1949.

Although general publication took place on January 10, 1949, the defendant would have required some period of time during 1949 to accommodate its manufacturing facilities to the production of its glassware or allied products with the "loop" design.

In addition, the sale of glassware products is somewhat seasonal, and the public display is one of the means to stimulate sales.

■ The plaintiff should be permitted to establish what financial loss, if any, resulted from the actions of the defendant in having its product available for public sale at the beginning of 1949.

### Order.

And now, this 22nd day of January, 1951, the Motion to Dismiss is denied and the defendant is directed to file an answer within twenty days after filing of the within Order in the office of the Clerk of Courts.