**AKTIEBOLAGET BOFORS v. UNITED STATES (two cases).**

**AKTIEBOLAGET BOFORS v. ACHESON, Secretary of State, et al.**

**Nos. 10870–10872.**

United States Court of Appeals District of Columbia Circuit.

Argued June 1, 1951.

Decided Nov. 29, 1951.

---

Charles E. Rhetts, Washington, D. C., for appellant.

Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty. at the time the brief was filed, and Ross O'Donoghue and Joseph M. Howard, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees. Charles M. Irelan, Washington, D. C., appointed U. S. Atty. subsequent to the argument in this case, also entered an appearance for appellees.

Before CLARK, WILBUR K. MILLER and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant, Aktiebolaget Bofors, instituted these three actions in the United States District Court for the District of Columbia on April 17, 1950. All three complaints, which contained substantially similar factual allegations and had the

same general objective, were dismissed by the trial judge, and these appeals followed.

We summarize the allegations of the complaints. Bofors, a Swedish corporation engaged in manufacturing and selling munitions, was the owner of an unpatented secret process by the use of which it produced a 40mm anti-aircraft gun, apparently of superior excellence. The Navy Department of the United States desired to acquire the Bofors secret. Negotiations resulted in a contract dated June 21, 1941, by the terms of which Bofors granted to the Navy Department, in consideration of the sum of six hundred thousand dollars, an "Exclusive and irrevocable license to make, use and have made in the United States for the United States use" the Bofors 40mm water-cooled gun for naval use, the Bofors 40mm air-cooled gun for army use, all types of ammunition therefor, and the Bofors field carriage for 40mm guns. Bofors agreed to make full disclosure of its secret process and to furnish the services of two expert production engineers for a period of one year.

The money was paid, and Bofors delivered to the Naval Attache at the American Legation in Stockholm all plans, specifications, manufacturing drawings and engineering data necessary to enable our people to manufacture guns and ammunition under the Bofors secret process. The United States immediately began to use the trade secret so revealed to it and also began to transfer, under the Lend Lease Act* and similar legislation, Bofors guns and ammunition to other nations to be used by them in the common war against Germany and Japan.

Bofors regarded such transfers as beyond the scope of the license which it had granted, and protested vigorously. Beginning in 1941 and continuing throughout several succeeding years, it informally importuned the American authorities either to work out a royalty arrangement for the unlicensed use of the trade secret, or to submit its claim for extra compensation to arbitration as provided in the contract. When all efforts to obtain an equitable adjustment through informal negotiation proved fruitless, Bofors addressed to the Secretaries of State, Defense, Army and Navy a formal document styled "Petition for Agency Action," which contained a full statement of the facts and again requested that those officials agree either to grant compensation for unauthorized use of the trade secret or to submit the dispute to arbitration. The petition for agency action was rejected by all four Secretaries, after which Bofors filed the three actions now before us.

1. No. 10870, Bofors v. United States. This action, alleged to sound in tort, is for damages in the sum of two million dollars. The government moved to dismiss on two grounds: (a) that the complaint failed to state a cause of action upon which relief could be granted, and (b) that the court was without jurisdiction over the subject matter. The District Court's order of dismissal expressly sustained both grounds of the motion.

We first examine the complaint to see whether it states a cause of action upon which relief can be granted. Bofors pleaded that the action arose under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), so the initial inquiry is whether the allegations described a tort.

 The owner of an unpatented trade secret has a property right in it as long as he does not disclose it. His right to the exclusive use of it depends upon the continuance of secrecy. Any person who obtains the secret from him by theft, bribery, stealth, breach of a confidential relation or other unlawful means violates his property right and commits a tort.[1] As Judge Holtzoff said in his opinion in this case, "So long as the secret remains intact,

* 22 U.S.C.A. § 411 et seq.

1. A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 1934, 73 F.2d 531, 536–539; Booth v. Stutz Motor Car Co. of America, 7 Cir., 1932, 56 F.2d 962; Feasel v. Noxall Polish Mfg. Co., D.C. E.D.Pa. 1920, 268 F. 887, 891; Peabody v. Norfolk, 98 Mass. 452; Radium Remedies Co. v. Weiss, 173 Minn. 342, 217 N.W. 339; Pressed Steel Car Co. v. Standard Steel Car Co., 210 Pa. 464, 60 A. 4.

any one who invades it, is guilty of a tortious act." [2]

The tort lies in the wrongful acquisition. But one who has lawfully acquired a trade secret may use it in any manner without liability unless he acquired it subject to a contractual limitation or restriction as to its use. In that event a licensee who uses the secret for purposes beyond the scope of the license granted by the owner is liable for breach of contract, but he commits no tort, because the only right of the owner which he thereby invades is one created by the agreement of disclosure.[3] The owner could not maintain a suit against him for damages arising from unlicensed use without pleading and proving the contract. This being true, the gist of the owner's action is the breach of the licensing agreement.[4]

Here the Navy Department acquired the secret lawfully. Subsequent unauthorized use by the United States was, therefore, not tortious. It follows that the complaint in case No. 10870 did not state a cause of action in tort. Moreover, 28 U.S.C. § 2680(h) excepts from those claims upon which the government may be sued under the Federal Tort Claims Act "Any claim arising out of * * * interference with contract rights."

Even though a tort claim was not stated in the complaint, we should determine whether its allegations set up any other cause of action, for the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states. Bofors' denomination of its suit as one arising under the Federal Tort Claims Act was a conclusion which does not prevent the court from recognizing any other form of claim which the complaint described. According to the allegations here, the United States acquired the trade secret subject to the contractual limitation "to make, use and have made in the United States for the United States use" the devices therein described. If the United States used the secret process in manufacturing guns and ammunition for use by other nations, as Bofors alleged, it violated the agreement of June 21, 1941, and, consequently, the complaint stated a cause of action for breach of contract.[5] It may be that the alleged action of our government in making unauthorized use of the trade secret was morally justified by the exigencies of war, as Harry L. Hopkins sug-

2. D.C.D.D.C.1950, 93 F.Supp. 131, 133.

3. Section 757 of Restatement, Torts (1939), is in part as follows:
 "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if
 "(a) he discovered the secret by improper means, or
 "(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him * * *."
 In the Comment following the section we find the following (pp. 3–4 and 8–9):
 " * * * It is the employment of improper means to procure the trade secret, rather than the mere copying or use, which is the basis of the liability under the rule stated in this Section.
 * * * * *
 " * * * a manufacturer who is permitted by the owner of the secret to use it in his manufacturing may be subject only to a duty not to disclose the secret to third persons. Or the manufacturer may be permitted to use the secret only

in the manufacture of products for the owner, with a duty not to disclose the secret or use it in the manufacture of products on his own account or for others."

4. Whittaker v. Collins, 1885, 34 Minn. 299, 25 N.W. 632.

5. The government argues that the United States was "using" the Bofors equipment within the meaning of the license by transferring it to allied and associated nations for their use in waging war against common enemies. The contention has little force. If the parties to the contract had intended to disclose the secret to the United States for use in manufacturing equipment for the use of other nations, the words "for United States use" would not have been inserted in the sentence which granted the license. The reason for the use of those words is plain enough: our allies and associates were, of course, potential customers of Bofors.

gested;[6] but the alleged refusal of the military and naval authorities of the United States to discuss or arbitrate the question of compensation for such unauthorized use had no justification. It should be borne in mind that the purpose of the action was not to prevent unlicensed use of the trade secret, which Hopkins thought ought not to be done, but to obtain compensation for past and future use of the secret beyond the scope of the license which had been granted. Our conclusion is that the complaint in case No. 10870 stated a cause of action for breach of contract. The District Court erred insofar as it based its order of dismissal upon the ground that the complaint did not state a cause of action upon which relief could be granted.[7]

■ It remains to decide whether the District Court had jurisdiction of the cause of action for breach of contract set forth in the complaint. That court has concurrent jurisdiction with the Court of Claims of an action against the United States for damages for breach of contract when the amount claimed does not exceed ten thousand dollars, 28 U.S.C. § 1346(a) (2); but when a greater sum is sought, the Court of Claims alone has jurisdiction, 28 U.S.C. § 1491. We hold that the District Court was correct in dismissing the complaint in case No. 10870 because the cause of action for breach of contract therein stated is not within the jurisdiction of that court.

■ 2. No. 10871, Bofors v. Acheson, Secretary of State et al. This action against the Secretary of State, the Secretary of Defense, the Secretary of the Army and the Secretary of Navy, seeks a declaration of the rights of Bofors under the contract of June 21, 1941, including determination or arbitration of damages for its violation. As the four Secretaries were not parties to the contract and were not personally interested therein, the appellant's prayer for declaratory relief was clearly directed at the sovereign, which was not made a party defendant. Consequently, the complaint was properly dismissed. Larson v. Domestic & Foreign Commerce Corporation, 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

■ Appellant urges, however, that § 10 of the Administrative Procedure Act, 5 U.S.C. § 1009, waives the government's immunity from suit and permits this action against the officers by providing in subsection (a) that "Any person suffering legal wrong because of any agency action * * shall be entitled to judicial review thereof." We have recently said that § 10 of the Administrative Procedure Act does not extend the jurisdiction of any court to cases not otherwise within its competence. Almore v. Pace, 1951, 89 U.S.App.D.C. ——, 193 F. 2d 699. Moreover, we note that subsection (c) provides that "Every * * * final agency action for which there is no other adequate remedy in any court shall be subject to judicial review." As we have said heretofore, the appellant could have sued in the Court of Claims for damages for breach of the contract. Thus an adequate remedy afforded by the Tucker Act prevents Bofors from relying on § 10 of the Administrative Procedure Act.

6. The following letter, written by Mr. Hopkins to a Bofors representative, was shown in a footnote to Judge Holtzoff's opinion, 93 F.Supp. 131, 132. He described it as "picturesque," but obviously did not base his order of dismissal upon it, as Bofors did not seek to enjoin unlicensed use:

"I have your letter of December 30 telling me to tell the Army and Navy to stop manufacturing Bofors guns for the use of the United Nations in the defeat of Germany and Japan.

"I can only say to you that if I had a client who asked me to do what you are asking your Government to do I should tell him to jump in the lake."

7. The order did not limit or qualify this ground of dismissal by saying the complaint did not state a cause of action upon which relief could be granted *by the District Court;* it broadly said a cause of action was not stated upon which relief could be granted, and then assigned as a second ground for dismissal the court's lack of jurisdiction. Thus the effect of the order was to hold separately (a) that no cause of action was stated, and (b) that the court was without jurisdiction over the subject matter. We have therefore considered both grounds for dismissal recited in the trial court's order.

3. No. 10872, Bofors v. United States. This action for a declaratory judgment is similar to No. 10871 except that here the United States is the sole defendant. Bofors sought a declaration that the government had violated the contract, and prayed that appropriate officials be required to agree upon or arbitrate the question of damages.

We have already determined that the complaint does not state a cause of action in tort. Although denominated a suit for declaratory judgment, the action is readily seen to be in reality for breach of contract like No. 10870, which we first discussed. It, too, was beyond the jurisdiction of the District Court under the Tucker Act.

Affirmed.

FAHY, Circuit Judge.

I concur in the result. In No. 10870, however, I think we should leave to the court having jurisdiction of the contract issue the question whether or not a cause of action for breach of contract is stated.