Albert A. DeVRIES, and A. DeVries and
Sons, Incorporated, a corporation,
Appellants,

v.

E. H. STARR, Appellee.

No. 9544.

United States Court of Appeals
Tenth Circuit.

April 19, 1968.

Robert C. Hanna, of Hanna & Mercer,
Albuquerque, N. M., for appellants.

John E. Conway and Charles W. Durrett, of Wilkinson, Durrett & Conway, Alamogordo, N. M., for appellee.

Before MURRAH, Chief Judge, DELEHANT *, Senior District Judge, and DOYLE **, District Judge.

DELEHANT, Senior District Judge.

Notwithstanding the foregoing caption, this proceeding is pending here between Albert A. DeVries, alone, as the appellant, and E. H. Starr as the appellee. Actually, the case has been so pending from its inception, through the filing on May 3, 1965, in the District Court, of the Complaint. For, theretofore, and as of March 28, 1963, the California corporation, A. DeVries and Sons, had been dissolved; and, as its sole shareholder and owner, Albert A. DeVries had succeeded to the ownership of all of its corporate property, including its choses in action.

In his STATEMENT OF THE CASE in appellant's brief, which statement is approved and adopted by the appellee in appellee's brief, the appellant, with essential accuracy, states:

"This was a civil suit for the misuse of a trade secret, namely, a confidential customers list. The Plaintiffs are" (sic) "Albert A. DeVries, a citizen of the Netherlands and A. DeVries and Son, Inc., a dissolved California corporation." (The words "Sons" and "Son" are used indiscriminately in allusions to the former corporation.) "The Defendant, E. H. Starr, is a resident (sic) of New Mexico. The complaint in two counts alleged damages of $25,000.00 actual damages, and $25,000.00 punitive damages. The first count alleged a tortious violation of Plaintiff's confidential customers list and the second count alleged a contractual breach with respect to the customer's list. The answer denied the allegations of the Complaint, including the complaint's allegation that the amount in controversy exceeded $10,000.00. The matter was tried to the court without a jury, the Honorable H. Vearle Payne presiding, on June 3, 1966. The trial court found that it had jurisdiction based on diversity and the amount in controversy; that Plaintiff Albert A. DeVries was the proper party to bring the action; that he had succeeded to all the rights of the Plaintiff Corporation, which corporation was dissolved in accordance with California law in March of 1963.

"The trial court found for the plaintiff on the question of liability, but dismissed the complaint for failure to prove damages.

"From the order dismissing the complaint for failure to prove damages Plaintiff has appealed." (Citations to pages of the trial court record omitted in this quotation.)

Thus, strictly speaking, the sole appeal tendered here is that of the appellant, Albert A. DeVries, from the order or judgment of the District Court dismissing his complaint and action. For the obvious reason that the trial court's order or judgment dismissed the action, the appellee has not tendered a cross appeal. However, in his brief he does question the correctness of certain evidentiary rulings during the trial; and does also argue that the trial judge was mistaken and in error in his conclusion that, in his use, or misuse, of a list of the purchasing customers of the importer, A. DeVries and Sons, Incorporated (which appears to have been its correct name) in the area of foreign produced cork and cork porducts, the appellee was guilty of a breach of trust as against A. DeVries and Sons, Incorporated, and was liable therefor in damages, if any, to that corporation, and on its dissolution, to its sole shareholder and successor, namely the appellant, Albert A. DeVries, and that the appellant was, consequently, entitled to recover such damages, if any, from the appellee. The appellee may, therefore, be understood to contend that

* Senior District Judge for the District of Nebraska, sitting by designation.

** United States District Judge for the District of Colorado, sitting by designation.

he was entitled to a judgment of dismissal as well upon the ground of his innocence of the misuse of the alleged trade secret, as upon the ground of a failure of the appellee adequately to prove damages.

■ Upon due examination and consideration of the record, and of the briefs and oral arguments of counsel in this court, we are satisfied that, despite patent infirmity in its initial assertion, supra, the actual existence in the trial court of jurisdiction upon the basis of diversity of citizenship and the presence of a controversy in the statutory jurisdictional amount, Title 28, U.S.C. Section 1332(a) (2), was correctly found by the trial judge. It is true that the complaint failed adequately to aver the citizenship of either Albert A. DeVries or E. H. Starr, and spoke, instead, of "residence" as to each of them, with the consequence that its immediately ensuing sentence, "a diversity of citizenship therefore exists," was a conclusionary *non sequitur*. Also, in his answer, the defendant, for asserted want of information, denied the existence of such diversity, and categorically denied the presence of an amount in controversy exceeding $10,000.00 (exclusive of interest and costs). But in the course of the trial, it was made clearly to appear that Albert A. DeVries then (i. e. on June 3, 1966) was, and theretofore, and, with reasonable certainty, on May 3, 1965, had been, a resident of Spain and a citizen of The Netherlands, and that E. H. Starr is, and throughout the litigation has been, a citizen of New Mexico. As between those parties, diversity of citizenship clearly existed. And such diversity also existed as between A. DeVries and Sons, Incorporated (so long as it was a California corporation, and until its dissolution as of March 28, 1963) on the one hand, and E. H. Starr, on the other hand. But, in the circumstances, such diversity between the appellant and the appellee is what mattered. And the complaint fairly discloses the presence of a controverted claim exceeding in amount $10,000.00, exclusive of interest and costs. It is mentioned at this point that, at the close

of the trial of this action, and upon the motion of the defendant, E. H. Starr, expressly unresisted by the plaintiff Albert A. DeVries, the ostensible (though actually nonexistent, supra) plaintiff, A. DeVries and Sons, Incorporated was "dismissed from this lawsuit." Neither the propriety nor the finality of that dismissal is an issue on this appeal.

■ Upon similar examination and consideration, we are convinced that, for the reasons (a) set forth by the trial judge in the oral announcement in open court of his findings and ruling, and (b) contained in the court's Findings of Fact and Conclusions of Law, the trial court correctly found and concluded that, in consequence of his tortious misuse of a list of customers of the appellant, or of A. DeVries and Sons, Incorporated, which list the appellant, at the appellee's written request, had prepared and delivered to the appellee, upon the faith of the latter's written assurance of confidentiality in its employment by the appellee and of the appellee's abstinence from any competitive approach to the customers named in the list, the appellee was and is liable to the appellant, as the legal successor to the rights of A. DeVries and Sons, Incorporated, for such damages as resulted to that corporate entity, or to the appellant, its sole successor, as the proximate consequence of such misuse.

It appears to us to be unnecessary, and, in the current plight of the present appeal, inappropriate, for us to embark upon any exhaustive analysis of the trial court's finding and conclusion adverted to in the immediately preceding paragraph hereof. At the close of the trial conducted under obvious pressure on the score of available time, and with notable resort to selected excerpts from sundry pretrial depositions, together with oral testimony of the parties litigant, for its evidentiary ingredient, the trial judge promptly announced from the bench his findings and conclusions, and foreshadowed his later formal entry of judgment. Some twenty days thereafter, and on June 23, 1966, he prepared and filed in the action Findings of Fact and Con-

clusions of Law, wherein he reiterated and essentially restated that earlier oral announcement, and also announced the entry of the judgment of dismissal. That judgment was entered as of July 5, 1966 and filed on July 15, 1966. Notice of appeal was filed in the office of the clerk of the District Court on August 9, 1966. Incidentally, with the record before us are photographic copies (certified by the clerk of the District Court) of:

(a) JUDGMENT dismissing the plaintiff's action and awarding judgment in favor of the defendant, filed in the office of the Clerk of the District Court on May 15, 1967; and,

(b) NOTICE OF APPEAL from the "final" Judgment entered in this action on May 15, 1967, also certified by the Clerk of the District Court, as a true copy of the original filed in the office of the Clerk of the District Court, with a certification by one Mary Ann Montoya that a copy of such Notice of Appeal was "mailed to opposing counsel of record this 16th day of May, 1967," which item in its entirety is marked "Filed, United States Court of Appeals Tenth Circuit, July 10, 1967, WILLIAM L. WHITTAKER, Clerk."

The evidence before the trial court, as reflected on this appeal, clearly supports the factual statement now made. At all times material herein, and particularly from some inexactly established time in 1954 or 1955, Albert A. DeVries was engaged in business as an importer, that is, in acquiring commodities of foreign production and manufacture, and reselling them, desirably at a profit, to retail outlets in the United States. He was and is a citizen of The Netherlands. His residence during this litigation was, and presently appears to be, in Spain; but before, and during, the interval within which this litigation arose, he also had a residence in California, and, as appears from the record, at Carmel, in that state, where he transacted his business. While his importing business was not strictly limited to the product now mentioned, he dealt largely in the commodity of cork and cork products. And it is with that

commodity that this litigation is solely concerned. The cork in which he dealt was and is produced abroad, largely, if not entirely, in Portugal. So, Albert A. DeVries depended, for his acquisition of a stock of salable merchandise, upon purchases by him from the representative or representatives of foreign sources of such products. He operated both in his individual name and, during a few years before its corporate dissolution as of March 28, 1963, supra, through his wholly owned corporation, A. DeVries and Sons, Incorporated.

At all times material herein, the appellee, E. H. Starr, held the agency for the sale, within the area of the operations of Albert A. DeVries and A. DeVries and Sons, Incorporated, of the cork and cork products which Mr. DeVries and his corporate alter ego required for their trade.

From an uncertainly identified date in 1960, and until the occurrences giving rise to this litigation, Albert A. DeVries, in the name of A. DeVries and Sons, Incorporated, purchased his requirements in the way of foreign produced cork and cork products, through the appellee, E. H. Starr. In consequence of the operation of reduced prices to importers, A. DeVries and Sons, Incorporated, solely owned and operated by Albert A. DeVries, purchased from the appellee such products at prices low enough to enable it to sell to its purchasing customers at a profit, yet at prices substantially higher than those paid by the appellee to the European producers of such products. Thus, for such products, the appellee paid a price substantially lower than the price at which the identical products were being purchased from the appellee by A. DeVries and Sons, Incorporated, and, thereby, derived a profit on and from his sales to A. DeVries and Sons, Incorporated.

Shortly prior to June 6, 1962, the appellee, by way of solicitation of business, sent a price list for cork products to Lin-Brook Hardware, Anaheim, California, one of the DeVries customers for such products. The appellant learned early of that incident, and on June 6, 1962 trans-

mitted to the appellee a letter protesting against the action. On June 9, 1962, the appellee replied to that protest disclaiming any antecedent knowledge by himself of the status of seller and customer relations between DeVries and Lin-Brook Hardware, and also stating:

"If I could have in strict confidence a list of your customers regardless of address and location, I could the better protect your interest should any approach be made to me direct. All such would be immediately checked of (sic) my mailing list if they appear on it for witholding (sic) from all mailings. We have a rather broad mailing list and trade coverage from San Diego to Seattle but I am sure your wishes can be granted.

"As to any damage having been done I question if any has, as you are established with this Firm and our mailing amounts to just another general advertisement in their normal mail receipts. "Send us your Clientale and Adress's (sic) and we will cooperate with you in every respect."

Promptly thereupon, and as of June 11, 1962, the appellant in the name of A. DeVries and Sons, Incorporated, replied by a letter to the appellee, wherewith was included a list of the names and addresses of the appellant's customers, some sixteen in number, all but one in California, as the writer of this opinion understands the list, and that one in Seattle, Washington.

In that letter, the appellant made the following request:

"Please sign the duplicate of this letter, agreeing that you will not now or in the future correspond with these peoples (sic), or in any way, direct or indirect maintain any contact with them."

Immediately, and on June 12, 1962, the appellee responded by means of a long letter dealing largely with other matters, but containing the following paragraph:

"With reference to your Customer Listing. Upon comparison with my mailing list I find but one, i. e. Lin-Brook Hardware of Anaheim, appear-

ing and was handed to me by my long standing customer in Anaheim. All of the others listed I never heard of and rightfully are your customers and their identity now in my hands constitutes your assurance that any correspondence received from any of them would automatically be handed over to you and without any action on my part and thus we have a Gentlemen's agreement in mutual interest. When you have customers and I have customers in the same locality we will try to function to avoid complications or rivalry between the customers."

And, in a letter to A. DeVries & Sons as of June 18, 1962, which dealt with several subjects, the appellee mentioned two of the appellant's customers, and closed with this paragraph:

"With me a Gentlemens agreement is sufficient and ample in your best interest and with us is stronger than any other means of agreement and we have passed along to you and will be in fact perpetual as long as you respect it. We have had other and similar Gentlemens agreements in existance (sic) and they are all working in perfect harmony, our agreement with you will be the same."

Reference is now made, without formal reflection, to the evidence and testimony received upon the trial, and especially to the announcement, at the close of the trial, by the trial judge, of his ruling and decision in the case, and to the trial court's Findings of Fact and Conclusions of Law, filed on June 23, 1966, and foreshadowed in the trial judge's announcement at the conclusion of the trial, supra.

Shortly stated, this court is of the opinion that the trial court's finding and conclusion that the list of the appellant's customers thus furnished by the appellant to the appellee upon the latter's express solicitation was, from the time of its submission to the appellee, and remained, in the nature of a trade secret, of which the appellee was legally obliged to make no use abusive of the appellant; that the appellee did misuse such list, and the information therein contained, by

competitively approaching, upon the basis and prompting of such list, a substantial number of the more desirable customers identified on such list; and, in consequence of its own preferential position in the involved particular trade, underpricing cork and cork products to such customers of the appellant below the appellant's ability to meet the resulting competition, and thus enticing such customers, or some of them, away from the appellant. Heyman v. A. R. Winarick, Inc. (2 Cir.), 325 F.2d 584, 9 A.L.R. 3d 652; Aktiebolaget Befors v. United States, 90 U.S.App.D.C. 92, 194 F.2d 145, Restatement, Law of Torts, Sec. 757, comment (b).

This court clearly understands that, in consequence of a dispute which had theretofore arisen between the appellant and the appellee over an item or items of shipment, they discontinued the transaction of business with each other, and the appellant ceased to make purchases from the appellee some time early in 1963, thus antedating the appellee's principally alleged circularization with price lists, of the appellant's major customers, and long before the institution of this action.

It is to be recognized that the present appeal is from the court's final judgment of dismissal of this action. And that dismissal is explicitly premised upon the trial court's announcement at the conclusion of the trial of its ruling in the case, and upon the Findings of Fact and Conclusions of Law. And it rests ultimately on the trial court's announced Conclusion of Law declared by it in the following language:

"The Court concludes as a matter of law, that the plaintiff has failed to prove any damages and, by reason thereof, his complaint should be dismissed."

Upon due consideration of the evidence in this cause, this court is of the opinion that such announced Conclusion of Law on the part of the trial court is mistaken and erroneous.

In Anvil Mining Company v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814, as of May 14, 1894, the Supreme Court of the United States, speaking through Mr. Justice Brewer, in a case arising out of breach of contract, said upon the subject of the proof of damages:

"Now, there was in this case testimony to show the cost of mining each ton of ore, and also the amount of ore remaining in the first level of the mine at the time the work stopped. From these figures the profit which would have been made by the plaintiffs if they had completed the work of mining all the ore on the first level is a mere matter of multiplication. It is true that the cost of mining the remaining ore might differ from that of mining the ore which had already been taken out; but still, proof of the cost of taking out that which had been mined, and of the condition of the mine as it was left, furnished a basis upon which a reasonable estimate could be made as to the cost of extracting the remaining ore. Equally true is it that there was no mathematical certainty as to the amount of ore remaining in the mine; yet both plaintiff and defendant furnished testimony as to such amount, and testimony which, while not such as to put it beyond doubt, was sufficient to enable the jury to make a fair and reasonable finding in respect thereto. The case is one, therefore, in which the profits are not open to the objection of uncertainty, and certainly not to that of remoteness, for they would have been the direct result of carrying on the contract to a completion, and were obviously within the intent and mutual understanding of both parties at the time it was entered into."

Much more recently, and as of January 6, 1941, the Supreme Court, speaking through Mr. Justice Reed, in Palmer v. Connecticut Railway and Lighting Company, 311 U.S. 554 to 562, 61 S.Ct. 379, 384, 85 L.Ed. 336, said:

"As there was no significant dispute over the facts proven, the conclusion

as to the sufficiency of the evidence was for the reviewing court. We deal, in this review, with the method of the proof of damages, not the measure. Narrowed even more, the issue is whether the evidence offered justifies an award, whether the quantum of proof produced forms an adequate basis for a reasoned judgment.

"Future rental value cannot be susceptible of precise proof. As it depends, so far as the amount of damages for breach of a lease is concerned, upon future profits, it partakes of the nature of loss of earning capacity or of credit. To require proof of rental value approaching mathematical certitude would bar a recovery for an actual injury suffered. All that can be done is to place before the court such facts and circumstances as are available to enable an estimate to be made based upon judgment and not guesswork. Every anticipatory breach of an obligation, and every appraisal of damage involving the present value of property involves a prediction as to what will occur in the future. Present market value of property is but the resultant of the prediction of many minds as to the usability of property and probable financial returns from that use, projected into the future as far as reasonable, intelligent men can foresee the future.

"The proof of future profits by the evidence of past profits in an established business gives a reasonable basis for a conclusion. It is true that this business changed from trolley to bus within two years of the end of the base period and that management changed from lessee to lessor but we think the fact of transportation in the same communities for more than a quarter of a century sufficed to give the operation the classification of an established business. Here different methods of operation or normal changes in the executive staffs do not seem sufficient to interfere with the probative value of past experience. Franchises and property of street railways and bus lines are difficult of appraisal. Nothing is more indicative of their value for lease or sale of the fee than past earnings. If we were to adopt the view that the interest conveyed is a defeasible fee, its defeasance dependent upon a condition such as nonpayment of annual instalments of the purchase price, the same difficulties exist. The unknown subtrahend would be the present value, instead of the rental value. Evidence of value would be made up of the items of proof. One of the most important of these, in the case of property such as here involved, would be past earnings.

"This Court has sustained recoveries for future profits over four years based solely upon evidence of the profits of an established business for the past four years. We there approved an instruction which told the jury, 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.'

"The ways compensatory damages may be proven are many. The injured party is not to be barred from a fair recovery by impossible requirements. The wrong-doer should not be mulcted, neither should he be permitted to escape under cover of a demand for nonexistent certainty. Damages for breach of the lease were in contemplation of the parties when the contract was made. The lease contained a covenant of reentry without prejudice to right of action for arrears of rent or breach of covenants. The provision in the Bankruptcy Act gives a new right of recovery in bankruptcy only. This right of recovery is an unsecured claim of the character of a claim for a deficiency above the value of inadequate collateral.

"Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion. The certainty of the evidence as to damages for rejection of a lease depends upon

the same tests as in other situations where damages are difficult of proof. This Court, recently, in an infringement case was required to appraise the value of opinion evidence as to the part of profits attributable to the use of a pirated play, an obviously elusive fact. No expert thought any greater percentage than ten should be attributed to the play. The lower court allowed twenty so that the award might by no possibility be too small. We approved because 'what is required is not mathematical exactness but only a reasonable approximation. That, after all, is a matter of judgment * * *.'

"Satisfactory evidence was presented for the three years of actual operation of the properties covered by this lease. We think that prior earnings of the same property over fourteen years was a fair base to use to project the estimate of the earnings for the eight years of future operation. The failure to produce further evidence, either through experts or transportation surveys, was not fatal to respondent's case, even though such evidence is admissible. We see no reason to disagree with the conclusion of the circuit court of appeals that under the evidence presented the damages for eight years might be predicted with a 'fair degree of certainty.' "

It is true that in that case there was a dissent explicitly on the ground of the inadequacy of proof of damages by Mr. Justice Douglas (concurred in by Mr. Justice Black) from the majority ruling reflected in Mr. Justice Reed's opinion. But it may well be considered that the dissent, instead of discrediting the prevailing opinion, served rather to emphasize the actuality of mature reflection and consideration out of which the majority ruling emerged.

In Sheldon v. Metro-Goldwyn Pictures Corporation, (2 Cir.) 106 F.2d 45, 51, aff'd 309 U.S. 390, 406–408, 60 S.Ct. 681, 84 L.Ed. 825, the Court of Appeals, Second Circuit, through Judge Learned Hand, in a copyright infringement case, said:

"We are aware that out of all this no real standard emerges, and that it would be absurd to treat the estimates of the experts as being more than expressions of very decided opinions that the play should count for very little. But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (Pieczonka v. Pullman Co., 2 Cir., 102 F. 2d 432, 434), and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted. Procedural duties are devised in aid of truth; and their unsparing use may defeat their whole purpose, as here it would. However, though we do not press the burden of proof so far, the defendants must be content to accept much of the embarrassment resulting from mingling the plaintiffs' property with their own. We will not accept the experts' testimony at its face value; we must make an award which by no possibility shall be too small. It is not our best guess that must prevail, but a figure which will favor the plaintiffs in every reasonable chance of error. With this in mind we fix their share of the net profits at one fifth."

And in National Labor Relations Board v. Kartarik, Inc. (8 Cir.), 227 F.2d 190, 192, 193, the court, speaking through Judge (later, Chief Judge) Johnsen, said:

"On respondent's second contention, as set out above, that the determinations of back-pay made by the Board were clearly erroneous as having been speculatively arrived at in their amounts, we think that, at the least, such determinations on the part of the Board may not judicially be required to rest upon any greater degree of certainty as to amount than that applicable to contract or statutory breaches generally. Cf.

F. W. Woolworth Co. v. N.L.R.B., 2 Cir., 121 F.2d 658, 663.

"That degree of certainty may appropriately be recalled. 'There is a clear distinction between the measure of proof necessary to establish the fact that (a party) sustained some damage and the measure of proof necessary to enable (a tribunal) to fix the amount.' Story Parchment Paper Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544. 'Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion.' Palmer v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 561, 61 S.Ct. 379, 385, 85 L. Ed. 336. These principles are, of course intended to permit a solution of the problem of amount to be made upon any range of facts, circumstances or reasonable inferences, which afford a rational basis for a conclusion."

This court in several reported opinions has disclosed its concurrence in the decisional considerations reflected in the foregoing quoted language. Thus, in Mountain States Telephone and Telegraph Company v. Hinchcliffe (10 Cir.), 204 F.2d 381, 382, 383 (a suit by a customer for the failure of a telephone corporation to furnish him with proper service), the court, by Chief Judge Phillips, said:

"The trial court also submitted to the jury the issue of loss of profits, if any, resulting from the failure to furnish proper and adequate telephone facilities. Whether there was any competent evidence to take that issue to the jury is the more difficult question presented on this record. It should be noted, however, that the trial court in submitting that issue carefully instructed the jury that its verdict must be based upon evidence and not upon speculation or conjecture.

"In Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 592, we said:

'The general rule is that, where the cause and existence of damages has been established with requisite certainty, recovery will not be denied because such damages are difficult of ascertainment. * * *

'In Straus v. Victor Talking M(ach). Co., supra, page 802 of 297 F., the court said: "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery." * * *

'A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient.'

"While the damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.

"However, the plaintiff must establish his damage by the most accurate basis possible under the circumstances. He must produce the best evidence reasonably obtainable."

In an earlier opinion, this court in Shannon v. Shaffer Oil and Refining Company (10 Cir.), 51 F.2d 878, 882, 78 A.L.R. 851, in the way of support of a ruling affirming a judgment denying damages largely through want of adequate proof of the elements and amount thereof, thus summarized the pertinent judicial teaching upon the point:

"Obviously a plaintiff may not come into court and say no more than 'the defendant stole some wheat' or that 'a fire destroyed some of my goods,' and ask for substantial damages. The rule is that, if an injured plaintiff has produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the exact amount of the damage is incapable of ascertainment. In Eastman [Kodak] Co. v. Southern Photo Co., 273 U.S 359, at

page 379, 47 S.Ct. 400, 405, 71 L.Ed. 684, the court held: 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate. This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.'

In Anvil Min. Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814, the Supreme Court held that mathematical certainty as to damage was not necessary, if the evidence 'furnished a basis upon which a reasonable estimate' of the elements entering into the damage might be made. In the Hoffer Case, supra, we held that 'a reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient.' "

In Wells Truckways v. Burch (10 Cir.), 247 F.2d 194, 196, 197, the court, after a comprehensive factual review, and with instant pertinence, said:

"There was, therefore, substantial evidence from which the jury could find loss of profits. Before recovery may be had for loss of future profits, it must be established by substantial evidence that such loss will occur. But when that is once established, it is not necessary that the exact amount of such loss be ascertained. It is then necessary only that the evidence be sufficient to enable the jury to reasonably approximate the amount of such loss."

In United States v. Griffith, Gornall and Carman, Inc. (10 Cir.), 210 F.2d 11, 13, a Federal Tort Claims Act suit by a contractor for damages caused by the flow of rain water from a government air base upon a concrete water pipeline under construction by the contractor, this court remanded to the trial court a judgment for the plaintiff with direction to eliminate from the trial court's judgment so much thereof as constituted an award of $15,000.00 for "injury and impairment of business, loss of earnings, destruction of credit and reduction of net worth" because of failure of proof of any such damage in the particular case. There was clearly a failure of such proof, coupled with evidence possibly reflective of the loss of gross receipts or "gross profits," so called, and a failure, despite the intimation of its availability, to show "net losses." Nevertheless, the opinion offers the following discussion reflective of the applicable decisional standard:

"Prospective profits are necessarily somewhat uncertain and problematical, but in cases where damages are definitely attributable to the wrong of the defendant and are only uncertain as to amount, they will not be denied even though they are difficult of ascertainment. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F. 2d 416, 426, certiorari denied 344 U.S. 837, 73 S.Ct. 46, [97 L.Ed. 651]; Indian Territory Illuminating Oil Co. v. Townley, 10 Cir., 81 F.2d 159; Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F. 2d 589, certiorari denied 280 U.S. 608, 50 S.Ct. 158, 74 L.Ed. 651. The loss of future profits from a regularly established business may in proper cases be established by showing that the profits after the wrong are less than past profits. 25 C.J.S., Damages, § 90; Palmer v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 561, 61 S.Ct. 379, 85 L.Ed. 336; Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L. Ed. 684; Kobe, Inc. v. Dempsey Pump Co., supra. This is often the only available evidence. The fact of damage, however, must be proved to a certainty. Mathematical exactness as

to the amount is not required but the evidence must form a basis for a reasonable approximation. The court must have before it such facts and circumstances to enable it to make an estimate of damage based upon judgment, not guesswork."

And in the recent case of Garcia v. Mountain States Telephone and Telegraph Company (10 Cir.), 315 F.2d 166, 167, 168, 169, a suit by a dentist to recover against a telephone company damages for the negligent omission of the plaintiff's name from the latter's telephone directory's classified section, this court, for want of supportive evidence of damages, and on the ground that a motion for a directed verdict against the plaintiff should have been granted, affirmed a judgment of dismissal based on a jury's verdict for defendant. There, too, the plaintiff, in the way of proof, had relied—and it would seem, deliberately—upon proof of diminution of gross professional receipts rather than of net loss. The following instructive language is quoted from the opinion:

"In cases like this, the injured party may 'recover damages for inconvenience, annoyance, discomfort and business interference without proving specifically the amount of pecuniary loss resulting therefrom.' Mountain States Telephone & Telegraph Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381, 382. Once the injured party proves the fact of his damages with reasonable certainty, 'recovery will not be denied because the damages are difficult of ascertainment.' Frank Bond and Son, Inc. v. Reserve Minerals Corp., 10 Cir., [65 N.M. 257,] 335 P.2d 858, citing Mountain States Telephone & Telegraph Co. v. Hinchcliffe, supra, and quoting from Stern v. Dunlap, 10 Cir., 228 F.2d 939, 943, where we said, 'It is enough if the evidence adduced is sufficient to enable the court or jury, as the case may be, to make a fair and reasonable approximation (of the damages).' And see also United States v. Griffith, Gornall & Carman, Inc., 10 Cir., 210 F.2d 11; Palmer v. Connecticut Ry. & Lighting

Co., 311 U.S. 544, 61 S.Ct. 379, 85 L. Ed. 336; Gould v. Mountain States Telephone and Telegraph Co., 6 Utah 2d 187, 309 P.2d 802; Corbin on Contracts, Vol. 5, Sec. 1020. But, the claimant most assuredly must establish his loss 'by the most accurate basis possible under the circumstances. He must produce the best evidence reasonably obtained.' Mountain States Telephone and Telegraph Co. v. Hinchcliffe, supra; Restatement of Contracts, Sec. 331(1). Loss of profits, where reasonably ascertainable, have been the usual measure of compensatory damages in cases like these. Mountain States Telephone and Telegraph Co. v. Hinchcliffe, supra; Muskegon Agency v. General Telephone Co., 350 Mich. 41, 85 N.W. 2d 170; Gould v. Mountain States Telephone and Telegraph Co., 6 Utah 2d 187, 309 P.2d 802. 'To say that one is entitled to recover his net profit is another way of saying that he is entitled to recover what he actually lost, as a result of the other party's default. In other words, he is entitled to be made whole as a result thereof, to be placed financially where he would have been but for such breach. * * * Compensatory damages will be given for the net amount of loss or gain prevented by one's breach.' Resolute Ins. Co. v. Percy Jones, Inc., 10 Cir., 198 F.2d 309. See generally Corbin on Contracts, Vol. 5, Sec. 1022."

But the plaintiff in the Garcia case, as has already been observed, manifestly sought by his evidence to predicate his recovery on the diminution of his gross receipts, without, in any wise, relating that diminution to his probable, or even possible, loss of net earnings, which was what really mattered.

More exhaustive reflection of the judicial teaching in respect of the presentation of proof of damages in litigation comparable to the instant case appears presently to be unnecessary. Consideration has, by us, been accorded to such deliverances upon a broad pattern; and those cases immediately hereinbefore cited, although not exhaustive, appear

to be, as well, reflective of generally prevailing opinion, as instructive concerning the pertinent, and ultimately controlling thinking of this court, and of the Supreme Court of the United States.

While, as has already been observed, supra, the appellant had been engaged generally in business as an importer for several years prior to 1960, the evidence indicates that his dealing in cork board and other cork products was initiated during the year 1960. He then began the purchasing of cork board from the appellee, and, of other cork products from another source not involved in this litigation. Early thereafter, however, the appellant began to purchase other cork products, as well as cork board, from the appellee, who thus became the prime source of the appellants' stock in trade.

By way of evidence in the trial, the appellant disclosed, (a) in the number of units, the quantity of cork board and cork products which he purchased from the appellee, (b) the total price in dollars which he paid therefor to the appellee, and (c) the net profit, in terms of dollars, which he realized therefrom, during each of the years, 1960, 1961 and 1962. For 1963, he similarly disclosed (a) the number of units, both of cork board and of other cork products by him purchased from the appellee, and the price in dollars by him paid therefor, and the amount in dollars of the net profit which, during 1963, he realized therefrom; and (b) the amount in dollars which he paid during that year for cork products by him acquired during that year from suppliers other than the appellee, and also the amount in dollars of the net profit which he realized from the products so acquired from other suppliers. The appellant also disclosed the amount, in terms of dollars, of net profits by him actually realized in 1964 from cork products by him theretofore acquired from the appellee, but disposed of during 1964.

■ From the authorities already cited, supra, it appears to be recognized that proof of a plaintiff's actual experience in the way of volume of business, and especially in the way of net profits, during a reasonable interval immediately preceding the impact of an actionable wrong of the sort here involved, is competent and instructive evidence, and is entitled to consideration, upon the subject of damages consequent upon such wrong. It provides a basis whereon, whether partially or exclusively, the trier of the facts may estimate and find such damages, for it points to the value of the enterprise against which a wrong is alleged.

■■ Evidence was also received of the amounts, in terms of money, of purchases of cork products made from the appellee by certain of the former customers of the appellant, named in the confidential list of customers, supra, (after the appellee had solicited and obtained such list of customers), through the device of price lists materially undercutting the appellant's prices for like cork products. Naturally, that evidence came largely from representatives of such former customers of the appellant. Then, the appellant presented testimony by himself as to what his percentage of profit would have been on sales to such customers in like respective volumes. Evidence of that nature is obviously instructive in the present context. For those customers, prior to their solicitation by the appellee through his price lists, were regular customers of the appellant, who, in consequence of such solicitation, were induced to withdraw their patronage from the appellant, to his potential and actual economic injury, as a result of the impairment of his business. His abandonment by such enticed customers was inevitably reflected in damages to him. In passing, it may be recognized that some of the factors entering into the appellant's computation of such loss of profits as to accounts of the nature mentioned in this paragraph may well be of arguable validity. But obviously, that consideration goes to the evaluation and probative significance of the computation, not to the entitlement to consideration, of such loss of profits, as was reasonably established.

This court considers that, in the setting of the present litigation, the evidence thus adverted to, as presented by the appellant, within the meaning of the cited decisions of this court, supra, was and is of such character as to be "the best evidence which is obtainable under the circumstances of the case and will enable" the trier of the facts "to arrive at an approximate estimate of the loss," and, especially, was and is adequate to enable the trial court to determine and arrive at a conclusion respecting the damages sustained by the appellant and to enter judgment therefor.

Instead, the trial court "conclude(d) *as a matter of law, that the plaintiff has failed to prove any damages,* and by reason thereof his complaint should be dismissed," (emphasis added), and announced the entry of judgment accordingly. So doing, it rejected as quite uninstructive the appellant's testimony as to his sales and profits experience prior to the appellee's tortious approach to the appellant's confidentially disclosed customers.

■ And, as to the appellant's testimony touching the extent of profits he would have made from sales, in volume approximable to those few identified sales to his known established customers post-intrusively effected by the appellee, the trial court treated it as if it were designed directly to support an award to the appellant in the amount of the profit he would have made out of such sales, as such, upon the assumption that he would have effected them but for the misconduct of the appellee. The latter evidence deserved consideration as supportive of the persistence, within the pertinent trade area, of the market for cork products which the appellant had developed, and, before the appellee's invasion, had enjoyed, and the volume and potential profits thereof, as a factor in the admeasurement of damages consequent upon the unjustifiable piracy by the appellee of the appellant's customers, and, therefore, of his entire business. Whether the appellee would have made those sales, and if so in what volumes

and amounts, was not the prime thrust of that evidence. It was, rather, the existence and persistence, and potential availability to the appellant, of the trade itself, and its significance in the ultimate solution of the question as to the amount of damage to the appellant resulting from the appellee's indefensible intrusion into the appellant's customer relations in their entirety, and not limited to the few customers identified in that particular evidence.

■ In passing, it is observed that throughout the trial, conducted, as has already been observed, under pressure manifestly arising out of the inadequacy of time for its presentation, the trial court held the appellant within rigid boundaries in the making of his proofs. Moreover, the trial judge did not hesitate explicitly to put aside and disregard, as patently incredible, several items of the appellant's testimony relevant to net profits, and therefore to damages, that were not the subject of controverting testimony. We readily recognize the right of a trial judge, in a case tried without a jury, to reject as untrue testimony though it be not directly disputed by contrary evidence. But that is a judicial prerogative which should be exercised only sparingly and with the utmost circumspection. Readiness to resort to it may well reflect an attitude that enters into the trial generally of a specific item of litigation wherein it is discernible. It is not here even intimated that such an influence was actually present in the trial of this case. It is, nevertheless, unfortunate that some of the thus rejected evidentiary statements are relevant to the issue of damages that was categorically and dispositively decided adversely to the appellant.

After mature consideration, it is concluded that the judgment herein of the trial court dismissing the complaint and this action on the ground of the failure of the appellant to prove his damages should be reversed, and that this action should be remanded to the trial court with instructions to determine and assess the appellant-plaintiff's damages, and to

**22**

make and enter judgment therefor in favor of the appellant and against the appellee. Beyond such action, this court is persuaded that it should not presently proceed. It is convinced, especially, that it should not restrict the trial court in respect either of the amount of its eventual judgment, or in the manner of its arrival at such amount.

Order and judgment accordingly.