**Harry I. SMITH, d/b/a Harry Smith Enterprises, Appellee, Cross-Appellant,**

v.

**BABCOCK POULTRY FARMS, INC., Appellant, Cross-Appellee.**

**Nos. 72–1288, 72–1289.**

United States Court of Appeals, Tenth Circuit.

Nov. 14, 1972.

Rehearing Denied Jan. 8, 1973.

---

Harold A. Hintze, of Strong, Poelman & Fox, Salt Lake City, Utah, for appellant, cross-appellee.

W. Brent Wilcox, of Moyle & Draper, Salt Lake City, Utah, for appellee, cross-appellant.

Before MURRAH, SETH and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Harry Smith entered into a three year franchise agreement with appellant, Babcock Poultry Farms, Inc. (Babcock), wherein he agreed to purchase from Babcock a stated number of breeding chickens each of the three years. Babcock

had developed a new type of breeding chicken, called the B–300, and was anxious to establish a market for them in the Utah area where Smith resided and conducted business. These breeders produce hatching quality eggs from which chicks are hatched and sold to others in the business, or the eggs could be sold to others to enable them to hatch their own chicks. The eggs that are not considered to be of hatching quality are sold at somewhat lesser prices as consumer eggs to commercial outlets.

The first and second years of the agreement Smith purchased breeders in sufficient numbers to comply with his agreement. Also, during the second year, acting on the representations made by Babcock's national franchise manager that all hatching quality eggs that Smith could produce would be purchased by other franchisees of Babcock at sixty cents a dozen, Smith ordered and received an additional 10,000 B–300 breeders. He was unable to pay for them when payment was due and later executed a non-interest bearing promissory note for their purchase price on November 27, 1967. Smith grew these additional 10,000 breeders into production, but Babcock did not arrange the purchase of all the hatching quality eggs by its other franchisees, as it had agreed it would do. Because of this failure, Smith was forced to sell hatching quality eggs as consumer eggs for an average price of twenty cents a dozen, and was unable to pay the promissory note when it became due. Smith mailed letters to Babcock complaining that it had breached its representations and warranties.

After discussions of the representations and the note with Babcock's officers, an egg assignment was entered into on April 5, 1968. This assignment provided that Babcock was to be paid on the remaining balance of the promissory note one-half of the proceeds from all hatching quality eggs sold to its other franchisees by Smith. In the event that sales of hatching quality eggs to other franchisees did not produce the necessary money to pay off the note under this arrangement, Babcock was to absorb any loss. The note was paid in full by August 1968.

Beginning about November 1, 1967, and at various times thereafter, Babcock's officers discussed with Mr. Al Rigtrup, of Spanish Fork, Utah, a former Babcock franchisee, the possibility of him becoming Babcock's franchisee in Utah. On January 27, 1968, a three year franchise agreement between Rigtrup and Babcock was signed. Babcock gave no notice of this arrangement to Smith, nor did it notify him that his franchise had been cancelled. It appears that Smith became aware of this situation sometime in July 1968.

Smith requested that Babcock sell him 5,000 B–300 breeders for the third year of the franchise in accordance with its terms, but Babcock refused to do so. The testimony was that year that these breeders would have been in production was one of the best ever for the business due to high prices for market eggs and a high demand for day-old chicks and for hatching eggs.

Smith brought this suit against Babcock alleging breach of the franchise agreement and breach of oral warranty. Babcock counterclaimed for breach of franchise agreement. The trial court, sitting without a jury, found that the egg assignment constituted an accord and satisfaction of the breach of oral warranty claim, but found a breach of the franchise agreement by the defendant Babcock. It entered judgment in favor of Smith in the amount of $22,387.00 together with interest and costs. From that judgment Babcock appeals and Smith cross-appeals.

Appellant Babcock presents two points of error in this appeal; first, that there was no substantial evidence to support the trial court's finding that appellant breached its franchise agreement with Smith, and secondly, that the damages awarded by the trial court for loss of profits were based on speculation and conjecture.

Smith on cross-appeal urges error in the trial court's finding that the egg assignment constituted an accord and satisfaction with respect to his claims arising from appellant's breach of oral warranty that the hatching quality eggs from the additional 10,000 breeders would be purchased by other franchisees of appellant.

As to appellant's first contention, we hold that the trial court's finding was not clearly erroneous and that there was substantial evidence from which the court could have concluded that appellant breached its franchise agreement with Smith. Cherokee Laboratories, Inc. v. Pierson, 415 F.2d 85 (10th Cir.); Cosby v. Shackelford, 408 F.2d 1144 (10th Cir.); Glenns Falls Insurance Co. v. Newton Lumber & Mfg. Co., 388 F.2d 66 (10th Cir.).

Appellant's officers testified that Smith's area for purposes of distribution was Utah and Idaho, that there was room in Utah for only one franchisee, and that as far as appellant was concerned, the decision had been made in early 1968 to give the franchise to Rigtrup and stop doing business with Smith. There was conflicting testimony as to whether or not appellant had received an order for the third year requirement of 5,000 B–300 breeders from Smith.

■ Taking this evidence in the light most favorable to Smith, there is substantial evidence in the record from which the trial court could have found that the appellant breached the franchise agreement, and we find no error in his so doing.

Appellant also urges this court to reverse the decision below, alleging that the damages awarded were based purely on speculation and conjecture.

■■ Damages which are based on conjecture or speculation are, of course, not recoverable. United States v. Griffith, Gornall & Carman, Inc., 210 F.2d 11 (10th Cir.). However, the fact that damages are difficult to ascertain will not bar recovery. United States v. Grif-fith, Gornall & Carman, Inc., *supra;* DeVries v. Starr, 393 F.2d 9 (10th Cir.).

■ The record before us supports the trial court's award of damages and the amount thereof. The court heard one witness who testified that he would have purchased 60,000 baby chicks from Smith had they been available, and heard testimony from Smith that his customers in previous years, and new contacts he had made, would have enabled him to sell at least an additional 10,000 day-old chicks in the year in question. The trial court used a figure of 67,500 day-old chicks which Smith would have sold, in computing damages, and this was based on the evidence. There was testimony that one of Smith's previous customers purchased more hatching eggs from other sources, including the new Utah franchisee, Rigtrup, than Smith would have had available for sale. The trial court found that the remaining eggs could have been sold as market eggs. The price of market eggs was very high during this period and the trial court determined that Smith would have received an average price of thirty-five cents per dozen.

The figures used by the court to arrive at total production per hen were testified to by Smith and were similar to those reported in appellant's advertising literature. The costs used in determining net profit were those Smith testified he had incurred when dealing with the previous orders of breeders, and in addition, those which appellant's officers testified that Smith would incur in his operation.

The trial court had reasonably certain facts from which to determine the amount of damages, and find that damages were not based on speculation or conjecture.

Turning now to Smith's cross-appeal, we are asked to find that the trial court committed error in concluding that the egg assignment constituted an accord and satisfaction of Smith's claim of breach of oral warranties. The egg as-

signment was signed after appellant admitted that its officers had guaranteed the sale of hatching eggs from the additional 10,000 breeders purchased by Smith. It provided that payment for the breeders would be made by sending appellant one-half of the receipts from the sale of hatching eggs to one of appellant's franchisees in California. If sales under this arrangement were not sufficient to pay the amount owed for the 10,000 breeders, appellant was to bear the loss.

We described accord and satisfaction under Utah law in Salisbury v. Tibbetts, 259 F.2d 59 (10th Cir.), quoting from Sullivan v. Beneficial Life Ins. Co., 91 Utah 405, 64 P.2d 351, 362, as follows:

> "An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to. And a satisfaction is the execution of such agreement."

And in Nevada Half Moon Mining Co. v. Combined Metals R. Co., 176 F.2d 73 (10th Cir.), we said that an accord requires proper subject matter, competent parties, a meeting of the parties' minds, and sufficient consideration.

Smith asserts that there was no meeting of the parties' minds, or more specifically that he did not intend that the egg assignment operate as an accord and satisfaction.

A letter from appellant's president to Smith, which Smith specifically incorporated into the egg assignment, reads in part as follows:

> "I do feel, however, that we have resolved our differences. . . . Since you expressed your satisfaction with the new arrangement, I assume that all is in order and we have now arrived at a mutually agreeable solution. . . .
>
> "If you sell less than 31,280 more dozen [hatching quality eggs] we will absorb the loss."

And in a letter to another franchisee, Smith wrote: "Bruce Babcock's [appellant's president] deal with me is equitable . . . ." From these letters and other testimony we find that there was sufficient evidence to enable the trial court to find that the egg assignment constituted an accord and satisfaction of any claim that Smith had for breach of oral warranty.

Smith also alleges that the actions of appellant's officers in attempting to sign Rigtrup as a franchisee and to ease him out as a franchisee amounts to fraud which makes the accord and satisfaction voidable.

The alleged fraud must go to a material fact. Even if we were to decide that there was fraud in the failure of appellant to disclose to Smith that appellant was attempting to persuade Rigtrup to become a franchisee for the Utah area, we do not see how that would be material relative to Smith entering the accord and satisfaction regarding the past events and undertakings, the purchase of the additional 10,000 breeders, his failure to pay for them as promised, and appellant's failure to supply a market for all the hatching eggs from these breeders. The subject of the accord and satisfaction did not relate to the franchise agreement itself nor its future operation.

Affirmed.